. The Lake Shore and Michigan Southern Railway Company

*v.*

Annie Ward.

*Filed at Ottawa January 22, 1891.*

1. Negligence—allegations and proofs—*variance as to place of injury.* In an action against a railroad company to recover for personal injuries resulting from alleged negligence on the part of the defendant, it was averred in the declaration that the plaintiff, at the time of the injury, was at a point where a certain street crossed the main track of defendant's railroad, while the evidence showed the plaintiff was injured while standing at a point twenty-five or thirty feet away from such

| | |
|---|---|
| 135 | 511 |
| 140 | 259 |
| 135 | 511 |
| 160 | 178 |
| 50a | 130 |
| 135 | 511 |
| 158 | 630 |
| 135 | 511 |
| 58a | 146 |
| 135 | 511 |
| 165 | 377 |
| 166 | 33 |
| 166 | 220 |
| 67a | 388 |
| 135 | 511 |
| 72a | 409 |
| 135 | 511 |
| 76a | 379 |
| 135 | 511 |
| 175 | 326 |
| 135 | 511 |
| 177 | 333 |
| 135 | 511 |
| 180 | 118 |
| 180 | 358 |
| 135 | 511 |
| 181 | 459 |
| 135 | 511 |
| 182 | 527 |
| 135 | 511 |
| 96a | 2575 |

| | |
|---|---|
| 135 | 511 |
| 194 | 1444 |
| p195 | 171 |

street: *Held,* that the variance was material, and might have been available if it had been properly pointed out and insisted upon by the defendant.

2. Same—*evidence as to mode of managing engine, etc.—under the pleadings.* In the same case, the allegations of negligence upon which a right of action was based, were, that the defendant, by its servants, carelessly and improperly drove and managed its locomotive engine, and that defendant was negligent in not providing proper and suitable platforms and railings at the crossing or point where the injury was inflicted. The plaintiff gave in evidence a rule of the defendant for the regulation of trains and engines at stations and street crossings: *Held,* that the rule was properly admitted, not for the purpose of founding a substantive cause of action upon its breach, but as tending, with other evidence, to show negligence in driving and managing the engine which inflicted the injury.

3. Same—*extent of injury—evidence under the pleadings.* In an action to recover for personal injuries inflicted by a railway accident, the declaration alleged that the plaintiff was knocked down upon the ground, and thereby bruised, hurt and wounded, and that divers bones of her body were broken, and that she was grievously wounded internally, etc.: *Held,* that the allegation was broad enough to include injuries to the internal reproductive organs, and was sufficient to admit evidence tending to show that the injuries had produced permanent sterility, or incapacity to perform the sexual duties incident to the marriage state.

4. Same—*practice—limiting effect of evidence—by instruction.* In such case, if the defendant fears that such evidence may be improperly considered by the jury as laying the foundation for the assessment of special damages growing out of the plaintiff's being deprived of the advantages of the marriage state, it should have asked an instruction placing proper limits upon the effect to be given to it.

5. Amendment—*of declaration to obviate a variance.* Under our statute, the court may allow an amendment of the declaration to avoid a variance, upon such terms as it may see fit to impose, after which the cause may proceed as though no variance had ever existed.

6. Practice—*variance—how availed of.* Where there is a variance between the allegation and the proof as to the place where an injury was inflicted, the attention of the court should be called to it, so as to afford an opportunity to obviate the objection by amendment of the declaration. It is not sufficient to state that the proof varies from the declaration. The party should point out in what the variance consists.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. S. Grinnell, Judge, presiding.

Mr. Pliny B. Smith, for the appellant:

The declaration charges that plaintiff was at the street crossing when injured, while the proof shows she was some distance south of such point. This is a fatal variance. See Chitty's Pl. 392; *Railroad Co.* v. *Rockafellow*, 17 Ill. 541; *Moss* v. *Johnson*, 22 id. 633; *Railroad Co.* v. *McKee*, 43 id. 120; *Railroad Co.* v. *Magee*, 60 id. 529; *Disbrow* v. *Railway Co.* 70 id. 246; *Railway Co.* v. *Foss*, 88 id. 551; *Bloomington* v. *Goodrich*, 88 id. 558; *Railroad Co.* v. *Conn*, 104 Ind. 64; *Railroad Co.* v. *Beam*, 11 Bradw. 219; *Chicago* v. *Dignan*, 14 id. 128; *Railroad Co.* v. *Morgenstern*, 24 Ill. App. 128; *Wright* v. *Railway Co.* 27 id. 200.

An engineer, seeing a person on the track, has the right to presume he will get off before the train reaches him. *Railroad Co.* v. *Hall*, 72 Ill. 224; *Railroad Co.* v. *Austin*, 69 id. 426; *Railroad Co.* v. *Modglin*, 85 id. 481.

The rule of the company was not proper evidence, under the pleadings. *Railroad Co.* v. *Bell*, 112 Ill. 360; *Railway Co.* v. *Coble*, 113 id. 115.

Under the allegation it was proper to prove the physical character of the injuries, and the physical condition in which they left the plaintiff; also, what her business was, and how her capacity for carrying it on was affected; but it will not admit evidence of her incapacity to enter the marriage state, as it is not a necessary or ordinary result of anything alleged in the declaration. Being special damage, it can not be proven without having been alleged. *Sherman* v. *Dutch*, 16 Ill. 283; *Horne* v. *Sullivan*, 83 id. 30.

The allegation is also erroneous because there is no proof of an existing contract of marriage, and, consequently, no damage on account of an inability to fulfill such a contract can be considered. It is like speculative damages sought to be recovered for preventing the plaintiff from transacting certain business. He can not be permitted to recover for money he might have made, unless it is shown he had outstanding

contracts which he was prevented from fulfilling, and from which certain ascertainable profits would have accrued. *Hill* v. *Parsons,* 110 Ill. 107; *Frazer* v. *Smith,* 60 id. 145; *Homer* v. *Wood,* 16 Barb. 386; *Olmstead* v. *Burke,* 25 Ill. 86.

. Mr. Charles E. Pope, for the appellee:

There was no variance. *Railroad Co.* v. *Beam,* 11 Bradw. 219; *Rock Island* v. *Cuinely,* 126 Ill. 408; *Wheeler* v. *Read,* 36 id. 81; Stephens' Pl. 107, 108; 1 Greenleaf on Evidence, sec. 79.

The admission in evidence of the rule was proper as an admission that the power constituted negligence. *Coates* v. *Railway Co.* 62 Iowa, 486.

Proof of the extent of the injury was proper. The declaration need not describe it in all its seriousness. *Chicago* v. *Sheehan,* 113 Ill. 658; *Railroad Co.* v. *Martin,* 111 id. 219; *Village of Sheridan* v. *Hibbard,* 119 id. 307; *Railroad Co.* v. *Gastke,* 27 Ill. App. 518.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Annie Ward against the Lake Shore and Michigan Southern Railway Company, to recover damages for a personal injury to the plaintiff, inflicted upon her by one of the defendant's locomotive engines, at or near the crossing of the defendant's railway tracks over Root (42d) street, Chicago. . At the place where said injury occurred, the defendant has three main tracks running north and south parallel with each other, the one farthest east being known as the "New Main Track," the middle one as the "In Main Track," and the one farthest west as the "Out Main Track." The distance between the "New Main Track" and the "In Main Track" was nine feet and four and three-fourths inches, and the distance between the last named track and the "Out Main Track" was thirteen feet and two and one-half inches. There were also two other tracks west of the "Out Main

Track," and three switch tracks east of the "New Main Track," the one farthest west running to the defendant's round-house which stood a short distance south of Root street. The "In Main Track" and the "Out Main Track" were used jointly by the defendant and the Chicago, Rock Island and Pacific Railway Company.

It seems to be conceded that for more than twenty years prior to said injury, both of said railway companies had been in the habit of stopping their northerly bound trains at Root street and of receiving and discharging passengers from such trains at that point, although no tickets to or from that point were sold, and passengers taking trains there were charged the same fare as those who got on at Thirty-ninth street. It appears also that no platform was provided for passengers at Root street, and no structure of any kind existed indicating where persons should stand who desired to take a train. It is claimed on the part of the defendant that the trains of said railway companies were stopped at Root street solely on account of the crossing of their tracks over those of the Stock Yards Railroad at Fortieth street and not for the accommodation of passengers, but it does not seem to be disputed that during all the time the trains of said companies had stopped there, passengers had been in the habit of getting on and off said trains entirely without objection by said companies.

On the 29th day of April, 1886, in the morning, the plaintiff was at the Root street crossing, waiting to take passage on the 7:30 a. m. Rock Island suburban passenger train running north on the "In Main Track." As the train was seen approaching, the plaintiff and other persons were standing in Root street between said track and the "New Main Track," while others were standing on the other side between the "In Main Track" and the "Out Main Track." As the train neared the crossing, the plaintiff and other persons desiring to become passengers thereon, walked south between the tracks to a point twenty-five or thirty feet south of the south line of Root street,

they having learned from experience that the rear coaches of the train were less likely to be crowded. After reaching the point above indicated, the plaintiff seeing the train approaching rapidly, and being apprehensive that her clothing might be caught in the draft produced by the rapid motion, drew back towards the "New Main Track," and was struck and injured by the tank of one of the defendant's engines which was slowly backing south on that track.

The defendant insisted in the Appellate Court and insists here, that there was a fatal variance between averments of the declaration and the evidence as to the place where the plaintiff was standing at the time she was injured. The declaration alleges that she was standing at the point where Root street crosses the defendant's main tracks, and that the defendant's servants were driving one of its locomotive engines across said street at said point or place where she was standing and there struck and injured her. The evidence, as seems to be conceded, is, that at the time she was injured the plaintiff was standing at a point twenty-five or thirty feet south of the south line of Root street. This would seem to be a material variance, and it would doubtless have been available if it had been properly pointed out and insisted upon by the defendant at the trial. That, however, was not done. At the close of the evidence the defendant's counsel asked the court to instruct the jury to find a verdict for the defendant on the ground that there was no negligence on the part of the defendant; that the accident occurred through the negligence of the plaintiff, "and that the proof varies from the declaration." This was the only attempt to point out a variance, and it was clearly insufficient. It was incumbent upon the defendant to indicate and point out in what the variance consisted, so as to enable the court to pass upon the question intelligently, and also to enable the plaintiff to so amend her pleading as to make it conform to the evidence, and thus avoid defeat upon a point in no way involving the merits of her claim. Under our statute the

amendment might have been instantly made, subject only to such terms as the court might have seen fit to impose, and the cause might then have proceeded as though no variance had ever existed. *St. Clair County Benevolent Society* v. *Fietsam,* 97 Ill. 474.

The counsel for the defendant, in his argument in this court, insists that there was in fact no passenger station at Root street, and that the plaintiff, at the time she was injured, was a trespasser upon the defendant's right of way; that the charges of negligence on the part of the defendant are not proved but on the contrary are disproved, and that the plaintiff's injury was the result of her own negligence, and a very large portion of his printed argument filed here consists of an attempt to establish these propositions from the evidence. In cases of this character counsel would spare themselves and us very considerable labor if they would limit their arguments to those questions which we have power to consider. It is manifest that the several propositions above stated present mere questions of fact as to which the judgment of the Appellate Court is conclusive and final, and every attempt therefore to reopen them in this court must prove unavailing.

It is insisted that the court erred in admitting in evidence, against the objection and exception of the defendant, the following joint rule of the defendant and the Rock Island Company:

"9. When passenger trains are at stations or street crossings, receiving or discharging passengers, other trains or engines must not, under any circumstances, pass between the standing train and station, or until the track is known to be clear. Engineers and trainmen will look out for local and dummy trains, of both roads, that stop at street crossings between Englewood and Chicago.

"For the government and information of employes, only."

The objection to the admission of this rule seems to be founded upon the theory that the plaintiff in some way sought

to base her right of action upon its violation, and that before she could be permitted to do so, she should have specially set out and pleaded the rule in her declaration. This we think is a misapprehension. The allegations of negligence upon which the plaintiff based her right to recover were, that the defendant, by its servants, carelessly and improperly drove and managed its locomotive engine, and that the defendant was negligent in not providing proper and suitable platforms and railings for the safety of passengers at the crossing or point where the injury was inflicted. The rule was admitted in evidence, not for the purpose of founding a substantive cause of action upon its breach, but as tending, with the other evidence in the case, to show negligence in driving and managing said engine. It was in the nature of an admission by said railway companies that due care in the running and management of their engines and trains at stations and street crossings where passenger trains were receiving and discharging passengers, required the course of conduct prescribed by the rule. In that view it was clearly admissible.

It is also claimed that the court erred in admitting evidence that the plaintiff's injuries were of so serious a nature as to prevent her entering the marriage state. The averment as to the nature and extent of her injuries is, that she was knocked down upon the ground and thereby bruised, hurt and wounded, and that divers bones of her body were broken, and that she was grievously wounded internally, and became sick, sore, lame and disordered, and has so remained hitherto, and that she fears greatly that her said injuries are of such a grievous nature that she may not recover therefrom for a long time and possibly not during the term of her life. The allegation is clearly broad enough to include injuries to the internal reproductive organs, and was sufficient to admit evidence tending to show that said injuries had produced permanent sterility or incapacity to perform the sexual duties incident to the marriage state. The evidence offered was therefore clearly admissible

as descriptive of the nature, extent and permanency of her internal injuries. If the defendant's counsel was apprehensive that it might be improperly considered by the jury as laying a foundation for the assessment of special damages growing out of the plaintiff's being deprived of the advantages of the married state, he should have asked an instruction placing proper limits upon the effect to be given to it.

The counsel for the defendant has argued a number of propositions growing out of the rulings of the court in the instructions to the jury. We have attentively considered all the suggestions submitted by him in that behalf, and while we are of the opinion that some of the instructions might have been more accurately worded, we are unable to perceive that any material error was committed by the court either in the instructions given at the instance of the plaintiff or in the refusal of instructions asked by the defendant. A discussion at length of each of the several points made would unduly protract this opinion and would serve no useful purpose. We think that the record is free from material error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*