JAMES M. FONDA v. ST. PAUL CITY RAILWAY COMPANY.[1]

February 3, 1898.

Nos. 10,881—(262).

### Street Railway—Injury to Person on Track.

In an action by a traveler on a public street for injuries caused by the alleged negligence of defendant's motorman in operating one of its cars, held:

### Negligence—Contributory Negligence—Question for Jury.

1. That the evidence made a case for the jury upon the questions both of the negligence of the motorman and of the contributory negligence of the plaintiff.

### Evidence of Incompetency of Motorman.

2. That evidence of the general incompetency of the motorman was inadmissible.

### Same—Of Private Rules of Employer.

3. That private rules of the defendant, intended only for the guidance of its employees, and not known to the plaintiff, were inadmissible.

### Motorman—No Evidence of Wilful Negligence.

4. That there was no evidence tending to show that the acts of the motorman were wanton and wilful, or that he discovered the plaintiff in a position of danger in time to prevent the injury by the exercise of reasonable care, so as to entitle the plaintiff to recover, notwithstanding that he might have been negligent in placing himself in a place of danger.

### Failure to Call Witness—Presumption.

5. The defendant having omitted to call its motorman as a witness, although within reach and available, the court was, under the circumstances, justified in instructing the jury that, in weighing the effect of the evidence actually introduced, they were at liberty to presume that the testimony of the motorman, if introduced, would not have been favorable to the cause of the defendant.

---

[1] Reported in 74 N. W. 166.

Appeal by defendant from an order of the district court for Ramsey county, Willis, J., denying its alternative motion for judgment notwithstanding the verdict or for a new trial, after a verdict for the plaintiff for $17,640.30. Reversed and new trial granted.

*Munn & Thygeson,* for appellant.

Upon the evidence in this case the plaintiff was clearly guilty of contributory negligence. O'Connell v. St. Paul, 64 Minn. 466; Hickey v. St. Paul, 60 Minn. 119; Heffinger v. Minneapolis, 43 Minn. 503; Miller v. St. Paul, 42 Minn. 454; Reed v. Minnesota, 34 Minn. 557; Newark v. Block, 55 N. J. L. 605; Busby v. Philadelphia, 126 Pa. St. 159; Thomas v. Citizens, 132 Pa. St. 504; Ehrisman v. East (Pa. St.) 24 Atl. 596; Wheelahan v. Philadelphia (Pa. St.) 24 Atl. 688; Carson v. Federal (Pa. St.) 23 Atl. 369; Schulte v. New Orleans, 44 La. An. 509; Wood v. Detroit, 52 Mich. 402.

The court below erred in admitting evidence of the general incompetency of the motorman. It makes no difference how negligent he may have been at other times prior to the accident. If, as a matter of fact, he handled the car in a prudent and proper manner at the time of the accident, the defendant would not be liable. Cunningham v. Los Angeles (Cal.) 47 Pac. 452; Baltimore v. Colvin, 118 Pa. St. 230; Warner v. New York, 44 N. Y. 465; Guggenheim v. Lake, 66 Mich. 150; Bryant v. Central, 56 Vt. 710; Dunham v. Rackliff, 71 Me. 345; Hays v. Millar, 77 Pa. St. 238; Tenney v. Tuttle, 1 Allen, 185; McDonald v. Inhabitants, 110 Mass. 49; Chase v. Maine, 77 Me. 62; Morris v. Town, 41 Conn. 252; Baldwin v. Western, 4 Gray, 333; Towle v. Pacific, 98 Cal. 342; Adams v. Chicago, 93 Iowa, 565; Elliot v. Chicago, 5 Dak. 523; Maguire v. Middlesex, 115 Mass. 239; Whitney v. Gross, 140 Mass. 232; Boggs v. Lynch, 22 Mo. 563; Jagger v. National, 53 Minn. 386.

The court below also erred in admitting in evidence the private rules of the defendant railway company: (1) because there was no evidence in the case either that the plaintiff knew of the existence of, or relied upon, such rules, or that his conduct was in any way influenced by their existence; (2) because, if they were offered as proof of a custom, it would have to be a general custom of city railways, and not the custom of any particular company, and the

custom must have been known to the plaintiff and relied upon by him, and his conduct influenced thereby, to his injury. Larson v. Ring, 43 Minn. 88; Larson v. St. Paul, 43 Minn. 423.

The evidence in this case did not justify the court in submitting to the jury the question of wilful or wanton negligence. Hickey v. St. Paul, 60 Minn. 119; Judson v. Great Northern, 63 Minn. 248; Holmes v. South, 97 Cal. 161; Thompson v. Chicago, 64 Minn. 159. The doctrine of wilful negligence applies only where the injured person through inadvertence has placed himself in danger, and where the wrong doer, after discovering the exposed position of the injured person, fails to exercise care in averting the danger. In the case at bar there is no evidence that the motorman could have averted the injury to the plaintiff after discovering his danger. Wilful negligence has no application where parties are equally in fault. Lockwood v. Belle, 92 Wis. 97; Goldnamer v. O'Brien, 98 Ky. 569.

The court erred in instructing the jury that the failure of the defendant to produce the motorman as a witness authorized them to infer that his testimony would be adverse to the defendant. Bleecker v. Johnston, 69 N. Y. 309; Miller v. Dayton, 57 Iowa, 423; Moore v. Wright, 90 Ill. 470; Lowe v. Massey, 62 Ill. 47; Scovill v. Baldwin, 27 Conn. 316; State v. Fitzgerald, 68 Vt. 125; Arbuckle v. Templeton, 65 Vt. 205; First v. Hyland, 53 Hun, 108; Tully v. Fitchburg, 133 Mass. 499; Cross v. Lake, 69 Mich. 363; Flynn v. New York, 50 N. Y. Sup. Ct. 375; 1 Jones, Ev. § 18; Nelms v. Steiner, 113 Ala. 562; Carpenter v. Pennsylvania, 13 App. Div. 328; Beattie v. Grand, 41 Vt. 275; Cole v. Lake, 81 Mich. 156.

*Stevens, O'Brien, Cole & Albrecht,* for respondent.

The evidence in this case not only fails to establish that the plaintiff was guilty of contributory negligence, but establishes conclusively that he was not negligent. Railroad v. Stout, 17 Wall. 657; Johnson v. St. Paul, 67 Minn. 260; Carroll v. Minnesota, 14 Minn. 42 (57); Hocum v. Weitherick, 22 Minn. 152; Loucks v. Chicago, 31 Minn. 526; Watson v. Minneapolis, 53 Minn. 551; Nettersheim v. Chicago, 58 Minn. 10; Flannagan v. St. Paul, 68 Minn. 300; 2 Thompson, Neg. 1172; Chicago v. Lowell, 151 U. S. 209;

Mentz v. Second, 3 Abb. Ct. App. 274; Wells v. Brooklyn, 58 Hun, 389; Fandel v. Third, 15 App. Div. 426; Brown v. Twenty-third, 56 N. Y. Sup. Ct. 356; Dobert v. Troy, 91 Hun, 28; Belton v. Baxter, 58 N. Y. 411; Voak v. Northern, 75 N. Y. 320; Chaffee v. Boston, 104 Mass. 108; Chicago v. Dignan, 56 Ill. 487; Newark v. Block, 55 N. J. L. 605; Spencer v. Illinois, 29 Iowa, 55; Shea v. Potrero, 44 Cal. 414; Van Praag v. Gale, 107 Cal. 438; Robinson v. Western, 48 Cal. 409; Topeka v. Higgs, 38 Kan. 375; Kellny v. Missouri, 101 Mo. 67.

If it cannot be held as a matter of law that the plaintiff was not guilty of contributory negligence, it was at least a question for the jury. Erd v. City, 22 Minn. 443; Hutchinson v. St. Paul, 32 Minn. 398; Dahlberg v. Minneapolis, 32 Minn. 404; Shea v. St. Paul, 50 Minn. 395; Hendrickson v. Great Northern, 52 Minn. 340; Terien v. St. Paul, 70 Minn. 532; Wharton, Neg. § 420; Beach, Contrib. Neg. § 163; Kerrigan v. West, 158 Mass. 305; Hoye v. Chicago, 62 Wis. 666; Farrell v. Waterbury, 60 Conn. 239; McCully v. Clarke, 40 Pa. St. 399; York v. Maine, 84 Me. 117; Consolidated v. Scott, 58 N. J. L. 682; Buttelli v. Jersey, 59 N. J. L. 302; Detroit v. Van Steinburg, 17 Mich. 99; Cooke v. Baltimore, 80 Md. 551; Smith v. Occidental, 99 Cal. 462; Omaha v. Loehneisen, 40 Neb. 37; Kellogg v. New York, 79 N. Y. 72; Stackus v. New York, 79 N. Y. 464; McLain v. Brooklyn, 116 N. Y. 459; Valin v. Milwaukee, 82 Wis. 1; City v. Jones, 61 Ill. App. 183; Chicago v. Robinson, 127 Ill. 9; Patterson v. Townsend, 91 Iowa, 725; Loucks v. Chicago, supra; Butler v. Milwaukee, 28 Wis. 487; Connelly v. Trenton, 56 N. J. L. 700; Chicago v. Hedges, 105 Ind. 398; Hendrickson v. Great Northern, supra; Thoresen v. La Crosse, 87 Wis. 597; Bonnell v. Delaware, 39 N. J. L. 189; Consolidated v. Glynn (N. J. L.) 37 Atl. 66; Strutzel v. St. Paul, 47 Minn. 543; Driscoll v. West, 159 Mass. 142.

Evidence is admissible of the general incompetency of the motorman when such incompetency is radical, inherent and natural, arising out of constitutional defects which render him unfit to perform the duty assigned, particularly where, as in this case, the complaint alleges as one of the acts of negligence complained of, not a specific act of negligence, but the employment of an incompetent servant and the fact that the plaintiff was injured by reason of such incom-

petency. 1 Beven, Neg. 786–788; 1 Greenleaf, Ev. § 52; McKinney v. Neil, 1 McLean, 540; Grube v. Missouri, 98 Mo. 330; Baulec v. New York, 59 N. Y. 356; Morse v. Minneapolis, 30 Minn. 465; Baltimore v. Camp, 81 Fed. 807; Vicksburg v. Patton, 31 Miss. 156; Leighton v. Sargent, 27 N. H. 460; Shaber v. St. Paul, 28 Minn. 103; State v. Manchester, 52 N. H. 528, 549; State v. Boston, 58 N. H. 410; Whittaker v. President, 126 N. Y. 544; Monahan v. City, 150 Mass. 439; Gilman v. Eastern, 13 Allen, 433; Chicago v. Sullivan, 63 Ill. 293; Michigan v. Gilbert, 46 Mich. 176; East v. Scott, 71 Tex. 703.

It was not error to admit in evidence the rules of the defendant company, for such rules are a statement by the company of what is deemed by it proper to be done or omitted in respect to the business in hand. No objection can be made by the company to the measurement of its conduct by the standard which it has itself prescribed. It is only when such rules are invoked as a standard of the conduct of others not connected with the party prescribing them that knowledge or notice is required. Such rules are not analogous to testimony of subsequent repairs as evidence of prior negligence, for the rules are not something called into existence after the accident, and the duty of prescribing and enforcing such rules as will secure due and proper care on the part of employees is firmly established by law. Faber v. St. Paul, 29 Minn. 465; Olson v. St. Paul, 38 Minn. 117; Sobieski v. St. Paul, 41 Minn. 169; Steffenson v. Chicago, 51 Minn. 531; Chicago v. Lowell, 151 U. S. 209; Warner v. Baltimore, 168 U. S. 339; Hobbs v. Eastern, 66 Me. 572; Lake Shore v. Parker, 131 Ill. 557; Lake Shore v. Ward, 135 Ill. 511; Dawley v. Wagner, 169 Mass. 315; Georgia v. Williams, 74 Ga. 723; Chicago v. Ryan, 62 Ill. App. 264; Baltimore v. Kean, 65 Md. 394; Danner v. South Carolina, 4 Rich. 329; Laufer v. Bridgeport, 68 Conn. 475; Slater v. Jewett, 85 N. Y. 61; Lewis v. Seifert, 116 Pa. St. 628; Maxwell v. Eason, 1 Stewart (Ala.) 514.

The court did not err in instructing the jury that in weighing the evidence they were at liberty to presume from defendant's failure to call the motorman as a witness, that his testimony, if introduced, would not have been favorable to defendant's cause. 1 Jones, Ev. § 17; Danner v. South Carolina, supra; Murray v. South Carolina,

10 Rich. 227, 231; Ville du Havre, 7 Ben. 328; Van Slyke v. Chicago, 80 Iowa, 620; Nicol v. Crittenden, 55 Ga. 497; The Fred M. Laurence, 15 Fed. 635; Baldwin v. Whitcomb, 71 Mo. 651; Greany v. Long Island, 101 N. Y. 419; Note, 14 L. R. A. 71.

MITCHELL, J.

The plaintiff, a stranger to and not an employee of, the defendant, recovered a verdict for personal injuries caused by the alleged negligence of defendant's servants; and from an order denying its motion for judgment notwithstanding the verdict, or for a new trial, the defendant appealed.

1. The first three assignments of error challenge the sufficiency of the evidence to justify the verdict, for the reasons, (1) that it failed to establish any negligence on the part of the defendant; and (2) that it conclusively appeared that the plaintiff himself was guilty of contributory negligence.

The accident occurred at or near the easterly intersection of Walnut and Seventh streets, in the city of St. Paul. These streets intersect each other at right angles, the course of Walnut street being northerly and southerly, and that of Seventh street easterly and westerly. The width of Seventh street from curb to curb is 46 feet. Along the middle of this street the defendant has two parallel tracks, the northerly track being used by west-bound and the southerly by east-bound cars. These tracks are four and three-quarters feet wide, and the space between them is a little less than four feet,—sufficient to permit cars to pass each other in safety.

In the forenoon of the day of the accident, plaintiff had traveled southerly, down Walnut street, to Seventh, for the purpose of taking an east-bound car going down town. He had reached the northeast corner of Walnut and Seventh, and then started to cross the latter, for the purpose of getting on the south side of the southerly track in order to take his car. His testimony as to what occurred is as follows:

"Just as I left the sidewalk to cross Seventh street, I looked up, and looked both ways. I saw a car approaching from the east over a block away, and I also looked the other way towards the west, and there was a car coming from that way too; and I walked out on the rails, and my intention was, as I walked out there, to

get across the rails, before the east-bound car got down there (the car I was going to take.) As I walked out on the track, that east-bound car got down there, and I couldn't cross it. So I hesitated a minute as the car got down by me. Then I started to walk around the tail end. Just as I started to walk around the tail end, and took a few steps, this west-bound car came along, and struck me, and knocked me down."

Leaving out of consideration for the present plaintiff's statement as to the distance of the west-bound car when he looked eastward, this testimony photographs quite correctly the general situation and manner in which the accident occurred. Evidently, the plaintiff estimated that he had time to cross both tracks before either car would reach the street crossing, but he overestimated the length of time it would take the east-bound car to arrive. Hence, when he reached the space between the two tracks, he found the east-bound car in too close proximity to enable him to cross in front of it, and then hurriedly turned to the west in order to go around the rear end of it. He testified that when he looked west, as he started to cross Seventh street, the east-bound car was a little this side of the middle of the block (that is, the block immediately west of Walnut street), and was coming down a pretty good gait.

The testimony of other witnesses as to the respective distances of the two cars when plaintiff started to cross Seventh street is conflicting. Plaintiff testified that he walked across Seventh street at an ordinary gait, of three or four miles an hour, until he turned to the west to pass around the end of the east-bound car, when he increased his speed. After he looked east, as he stepped from the curbstone to cross Seventh street, he did not again look to see how far the west-bound car was from him. Just as he stepped upon the northerly track, he signaled the east-bound car to stop. He testified that he heard the gong on the east-bound, but not on the west-bound, car. The other evidence was conflicting as to whether any signal was given on the latter of its approach to the street crossing.

The evidence as to the rate of speed of the west-bound car when it reached the Walnut street crossing, and passed the other car, varied from seven or eight miles up to fifteen or twenty miles an hour. Other evidence in the case is perhaps conclusive that the latter is an overestimate; but the jury would have been amply

justified in finding that it was considerably more than seven or eight miles; also, that its previous rate of speed was not at all slackened as it approached the street crossing. Approaching Walnut street from the east, Seventh street is on a downgrade, and on that forenoon the rails of the track were somewhat wet and slippery from recent rain. The motorman on the west-bound car was not produced as a witness on the trial. There were numerous other facts and circumstances in evidence having more or less bearing upon the questions of defendant's negligence and of plaintiff's contributory negligence, but what has been stated will give a fairly correct and complete idea of the general drift of the evidence.

The conjuncture of circumstances was such as to require peculiar caution on the part of the motorman on the west-bound car. He was approaching the crossing of two much-traveled streets in a populous part of the city. He knew, or ought to have known, that he was about to pass another car, and that, too, on the side of the crossing where it was liable to stop to let off or take on passengers, —a place of peculiar danger. The jury were abundantly justified in finding that he was guilty of negligence.

The question of plaintiff's contributory negligence was, under the evidence, also a question for the jury. A court would not be justified in holding, as a matter of law, that he was negligent. The number of concurring circumstances that bear upon that question makes the case peculiarly one for a jury.

The strongest argument that can be advanced against the plaintiff's conduct is that he did not continue to watch the west-bound car after he left the curb to cross Seventh street. But it must be remembered that the distance he had to travel was very short, and would occupy only a very few seconds. He would apparently have crossed the north track in safety but for the (to him) unanticipated arrival of the east-bound car. Doubtless, his attention was directed to that car, which was the one he desired to board; but the situation was one which was calculated to distract his thoughts from the west-bound car. He was suddenly confronted with an unexpected emergency, with little time to decide on his course of action. He had seen, as the jury might have found, the west-bound car quite a distance away when he started to cross Seventh street. He had

no reason to anticipate that it would be run at any unlawful or unusual rate of speed. On the contrary, he might reasonably expect that it would, in accordance with what every one knows of the general custom, approach with caution and slackened speed a street crossing, where another car going in the opposite direction was about to stop to take on or let off passengers. Our conclusion is that the evidence justified the verdict; but, for errors of law occurring on the trial, there must be a reversal.

2. Upon the trial, the court, against the objection of defendant, admitted evidence of the general incompetency of the motorman, based on the observations of witnesses who had seen him operate his car on prior occasions. We think this was error. The defendant is liable, if at all, for the acts of its servant upon the doctrine of respondeat superior. If the motorman was negligent on this occasion, the defendant is liable, no matter how competent he was or how habitually careful he had been on other occasions. On the other hand, if he was not negligent on this occasion, the defendant is not liable, notwithstanding that he may have been incompetent or habitually careless on former occasions. The sole issue, aside from that as to plaintiff's contributory negligence, was whether or not the motorman was guilty of negligence at the time of the accident.

When the act or omission is proved, whether it be actionable negligence is to be determined by the character of the act or omission itself, and not by the character of prior acts of the party committing it. If the plaintiff could offer testimony as to the general incompetency or as to prior negligent acts or omissions of the motorman, then with equal propriety the defendant, upon the issue of contributory negligence, might offer evidence of plaintiff's general carelessness, or of his negligent acts on other occasions. Indeed, we do not see why plaintiff would not, upon the same principle, have the right to introduce evidence that he himself was an habitually careful and cautious man. As the liability of a master for the acts of his servant rests upon the doctrine of respondeat superior, it can make no difference as to the admissibility of such evidence whether the alleged negligent act was committed by the servant or by the master in person. Hence, if the offered evidence was ad-

missible in this case, it would have been equally competent had the defendant been a natural person, and operating the car himself, to prove that he was incompetent to perform such work, or had performed it negligently on former occasions.

There are some cases which hold that where the person injured was killed, and there were no eyewitnesses of the occurrence, the general character of the deceased as a careful and prudent man may be shown for the purpose of raising a presumption that he was not negligent on the occasion in question. But this rule is based upon the supposed necessities of the case, and is repudiated by very eminent authorities. There is also a line of authorities which holds that, where the issue is whether a particular act or a particular way of doing it is or is not negligent, evidence is admissible to show that people generally under similar circumstances do the act, or do it in the same way. This is upon the ground that what men generally do under like circumstances is some test of ordinary care. But these cases have no bearing upon the question now under consideration.

Many of the authorities cited by plaintiff's counsel are cases where a servant brought an action against his master for injuries caused by the negligence of a fellow servant. In such cases the doctrine of respondeat superior does not apply, the gist of action being the negligence of the master in employing or retaining an incompetent servant. A moment's reflection will show that such cases are not at all in point. One or two of the cases cited by counsel were actions against the vendor for breach of warranty as to the efficiency of a machine in certain particulars going to its general mechanism, and where it was held that it was competent to show that other machines of the same pattern, made and sold by the same vendor, had been tried and found defective in the same particulars. The principle upon which these cases proceed is very apparent, and is the same upon which, in "fire cases," it has been held that it is competent to show that the locomotive alleged to have started the fire in question started other fires about the same time.

We have examined all of the numerous cases cited on this question, and find that, aside from obiter remarks in one or two in which

the question was not involved or not raised, only the following at all tend to support plaintiff's contention, viz.: Vicksburgh v. Patton, 31 Miss. 156; State v. Manchester, 52 N. H. 528; Craven v. Central, 72 Cal. 345, 13 Pac. 878; State v. Boston, 58 N. H. 410. But a careful examination of these cases shows that all they hold (unless it is the first) is that when evidence is conflicting as to whether a person, in conducting his business or performing his services, performed a particular act, or performed it in a particular way, it is competent to show that he was in the habit of performing the act, or performing it in that particular way, not as evidence of character or of fitness or unfitness, but simply as having some tendency to show that on the particular occasion in question he probably did the act, or did it in a particular way, in accordance with his general habit or custom.

Whether this rule is correct or incorrect, it falls short of sustaining the contention of plaintiff's counsel in the present case. The evidence introduced was not directed or limited to showing that the motorman was in the habit of doing or omitting to do some particular act which the other evidence tended to prove that he did or omitted to do on the occasion in question. It was to the effect that he was generally incompetent, as shown in a variety of ways, by his method of managing his car on former occasions. In brief, the inference sought to be drawn is that, if he was generally incompetent, it was more probably that he operated the car improperly on this occasion. Such an inference might at first blush seem to be a legitimate one, but it is too remote and conjectural to be permissible. Any such rule of evidence would drag innumerable collateral issues into the trial of a case; for evidence of general incompetency would necessarily result in the introduction of evidence of particular acts.

3. The court also admitted in evidence, over defendant's objection, its rules intended only for the guidance of its own employees in the operation of its cars. We think this was error. There was no evidence that the plaintiff had any knowledge of the existence of these rules or of any custom, based upon them, as to the manner of operating cars; hence his conduct could not have been in any way affected or influenced by them. It is not claimed that these

rules require or permit anything that is inconsistent with reasonable care.  The theory upon which they were offered was that they tended to show what duty the defendant owed to the public in the operation of its cars, and hence that a violation of any of them, being a breach of such duty, constituted actionable negligence, or at least was evidence of it.

Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public.  The latter, as far as they go, fix the standard of duty towards those whom they were intended to protect, and a violation of them is negligence in law or per se.  But a person cannot, by the adoption of private rules, fix the standard of his duty to others.  That is fixed by law, either statutory or common.  Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.

Under some circumstances, such rules may become an important factor in the application of legal principles to the conduct of a person; as, for example, where the rule was known to him, and he governed, or had a right to govern, his conduct accordingly.  Such was the case of Smithson v. Chicago Great Western, supra, page 216.  In that case the rule was known to, and obligatory upon, both the party injured and the party guilty of the alleged negligent act.  Each was bound to know that the other might and could regulate his own conduct on the assumption that he would obey the rule.  Some of the cases cited by counsel come within this class, and hence have no application here.  Others were cases of servants against their masters, in which the gist of the action was the failure of the master to perform his absolute duty to his servants to make and promulgate rules which, if observed, would give reasonable protection to his employees.  These cases are equally inapplicable.  Some are cases of municipal ordinances, which, for reasons already given, are not in point.

There are a few cases which support plaintiff's contention, but in

71 M.—29

none of them is the question considered or discussed at any length, and in some of them no reason whatever is given for the decision. The only reason assigned in any of them why such evidence is admissible is that it is in the nature of an admission by the party promulgating the rule that reasonable care required the exercise of all the precautions therein prescribed. Georgia v. Williams, 74 Ga. 723; Lake Shore v. Ward, 135 Ill. 511, 26 N. E. 520. The fallaciousness and unfairness of any such doctrine ought to be apparent on a moment's reflection. The effect of it is that, the more cautious and careful a man is in the adoption of rules in the management of his business in order to protect others, the worse he is off, and the higher the degree of care he is bound to exercise. A person may, out of abundant caution, adopt rules requiring of his employees a much higher degree of care than the law imposes. This is a practice that ought to be encouraged, and not discouraged. But, if the adoption of such a course is to be used against him as an admission, he would naturally find it to his interest not to adopt any rules at all.

To treat the adoption of such rules as an admission against the party would involve the same principle as treating repairs or improvements made after an accident as an admission of prior defects, —a doctrine long since repudiated by this court, and now repudiated by most of the courts of the country. Morse v. Minneapolis, 30 Minn. 465, 16 N. W. 358. If we could hold, as a matter of law, that these rules required nothing more than was required in the exercise of reasonable care, their admission would be error without prejudice; but an examination of them satisfies us that we cannot so hold.

4. The court instructed the jury, in substance, that the plaintiff might recover, notwithstanding that he might have negligently placed himself in a place of danger, if they found that the conduct of the motorman in running him down was wanton and wilful, or if, after discovering the plaintiff in a place of danger in time to have prevented the injury by the exercise of reasonable care, he failed to do so. Counsel do not dispute the correctness of this instruction as an abstract proposition of law, but contend that there was no evidence to justify the court in submitting any such

question to the jury. In this, we think, they are right. The jury might have been justified in finding that the motorman was grossly negligent, under the circumstances, in running his car at so high a rate of speed, and also in failing to keep a proper lookout to discover people on the track; but we do not think that there was any evidence that would have justified them in finding that he wantonly and wilfully injured the plaintiff, or that he discovered him in a place of danger in time to have avoided the accident.

Counsel for plaintiff contend that it was not necessary, in order to make the instructions applicable, that the motorman should have actually seen the plaintiff in a place of danger in time to have avoided the injury; that it was sufficient if, in the exercise of due care, he ought to have discovered him. Any such rule in cases of concurrent negligence proximately contributing to the injury would practically do away with the doctrine of contributory negligence altogether.

It is sometimes said that the plaintiff may be entitled to recover if the defendant might, by the exercise of care, have avoided the consequences of the plaintiff's negligence. But this doctrine is only applicable to cases in which the plaintiff's negligence preceded that of the defendant. But when the negligence of the two persons is contemporaneous, and the fault of each operates directly to cause the injury, neither can recover from the other. Bigelow, Torts, 311.

The true question in all cases is whether there was negligence on part of the plaintiff contributing directly as a proximate cause to the injury. If there was, he cannot recover. Where the defendant's acts are wilful and intentional, the negligence of the plaintiff, if any, is no longer deemed in law a proximate cause of the injury. In such cases the wilful and intentional acts of the defendant are deemed the sole proximate cause, and the negligence of the plaintiff only the remote cause, or, more properly speaking, the mere occasion, of the injury. The same is true where, after discovery of plaintiff's negligence in time to avoid injury to him, the defendant neglects to exercise due care to do so. Some confusion of ideas has arisen from the fact that courts, especially in the older decisions, have frequently used the word "gross" as if synonymous with "wilful" and "wanton," thereby conveying the impression that

a plaintiff may recover, notwithstanding his own contributory negligence, provided the negligence of the defendant was gross. This would be to adopt the doctrine of comparative negligence which has never been recognized by this court.

5. The defendant did not call its motorman as a witness, although it appeared that during the trial he was seen on one occasion in conversation with its counsel, and on another at its car barn in the city of St. Paul. In view of this fact, the court instructed the jury that,

"If either party to this action has failed to adduce evidence within its control which is reasonably calculated to throw light upon the conduct and responsibility of either party, such failure may be considered by the jury as tending to militate against the contention of such party with reference to the issue regarding which such evidence would have been pertinent."

This is assigned as error. The presumption, arising from the spoliation or suppression of evidence, that it would, if produced, be unfavorable to the party destroying or suppressing it, obtains with most force to the case of documentary evidence in the exclusive possession and control of the party. But the presumption is not necessarily limited to such cases. It is true that no unfavorable inference arises in ordinary cases from the mere failure to call as a witness one whom the other party had the same opportunity of calling or one whose testimony would be merely cumulative. There is also great danger of such a presumption being allowed to supersede the necessity of other evidence, instead of being used merely as a means of weighing the effect of the evidence actually produced applicable to the subject in dispute. But here the motorman was presumably the person, of all others, who could have fully and accurately informed the jury just how he operated the car, and explained what he did and what he saw. Instead of calling him, the defendant contented itself with calling bystanders, passengers, and others whose knowledge on the subject in dispute was presumably much less full and accurate. It is true, the plaintiff might have procured his attendance by subpœna, and thus obtained his testimony; but he was not bound to do so. This would have amounted substantially to going "into the enemy's camp" for evidence, and

calling the very man charged with the negligence which caused the injury.

Under the circumstances, we think the omission of the defendant to call him as a witness would have been a legitimate subject of comment to the jury by plaintiff's counsel, and that there would have been no error in the court's instructing the jury that, in weighing the evidence introduced, they would be at liberty to indulge in the presumption that the testimony of the motorman, if introduced, would not have been favorable to defendant's cause. See 1 Jones, Ev. § 16 et seq., and cases cited.

But, for the errors already referred to, the order appealed from must be reversed, and a new trial granted.

So ordered.