E. A. TYLER v. FRANCIS OMEIS and Others.

June 12, 1899.

Nos. 11,499—(67).

Contract—Finding Sustained by Evidence.

> Evidence considered, and *held* sufficient to justify the finding of the trial court.

Action in the district court for St. Louis county to recover $1,800 on a contract. The case was tried before Cant, J., who found in favor of plaintiff; and from a judgment entered pursuant to the findings, defendant Singer appealed. Affirmed.

*Davis, Hollister & Hicks* and *H. J. Grannis,* for appellant.

*H. B. Fryberger,* for respondent.

BUCK, J.

The trial court found as facts that for some time prior to February, 1895, the defendants Francis Omeis and Walter H. Singer were partners doing business as Francis Omeis & Co., and that during all the time mentioned in the complaint the defendants above named were engaged in the marble, monumental, and stone-carving work under the name of Duluth Monumental Works, and on the date above named the plaintiff, Tyler, entered into the contract set out in the complaint. The contract recites at the beginning thereof as follows:

"This agreement, made and entered into this 18th day of February, A. D. 1895, by and between J. E. Geldrich, Francis Omeis,

and Walter H. Singer and E. A. Tyler, all of the city of Duluth, Minnesota. Said Omeis and Singer are connected, and now doing business together, and known as Francis Omeis & Co. Whereas, the said J. E. Geldrich and said Francis Omeis & Co. have been in past few years engaged in the marble, monumental, and stone-carving work, under and are known by the name of Duluth Monumental Works, which said firm or works represent and show by a statement and balance sheet, marked 'Exhibit A,' showing the condition or standing of their business on January 1, 1895, in round numbers to be as follows: * * * Assets, $10,291.32; liabilities, $4,765.32; balance, $5,526."

It was stated in the contract that the above firm had secured work for the year 1895 amounting to $5,000. All parties agreed to continue the business under the same name, viz. Duluth Monumental Works, and do stone-carving work at the city of Duluth, Minnesota, and that the business should continue and the agreement be effective until January 1, 1896. Omeis & Co. were to receive $21 per month rental for the use of their property for such purpose during the existence of the agreement, and $1 for polishing machines for same time, and to receive certain compensation for certain other services. J. E. Geldrich was to be the general manager, and devote all his time to looking after the interests of such business, to the best of his skill and ability, and for the best interests of all parties concerned, and be paid for his services $1,000 per year in monthly payments. The plaintiff, Tyler, agreed to pay $2,000 cash, to be used in said business, and to give a note for $500 to Geldrich and Omeis & Co., payable January 1, 1896, and Geldrich, Omeis & Co. and Tyler each to own one-third interest in said business. Tyler was to take part in said business, and devote all his time thereto, and receive a compensation of $50 per month for so doing, but was not entitled to share in the profits thereof unless at the termination of the agreement he elected so to do, and then become a partner in the concern. If, on August 1, 1895, Tyler was satisfied with the business, he was authorized to take up his note for $500, either by paying off the same in cash or by giving a new negotiable note; but if, on account of any misrepresentations or misunderstandings as to the conditions of the aforesaid business, either in the bills and accounts receivable or in the amount of in-

debtedness of the concern, and if the business shall not prove to be a productive and profitable business, and said E. A. Tyler shall wish to discontinue his connection with the business at the termination of this agreement,

"Then, and in such case, the said note, $500, shall be returned to said E. A. Tyler without any payment of interest thereon, and said J. E. Geldrich and said Francis Omeis & Co. shall, and they hereby agree upon demand to pay back to said E. A. Tyler the said amount of $2,000, or such amount of money as the said E. A. Tyler may have paid into the said concern or business, and shall also pay to said E. A. Tyler interest upon all such money at the rate of 10 per cent. per annum for the full time such money shall have been used in the business and unpaid."

Immediately after the execution and delivery of said contract the plaintiff paid the defendants the sum of $2,000 cash mentioned in said contract, and delivered to them his promissory note for $500, drawing interest at the rate of 8 per cent. per annum, in accordance with the terms of said contract. Up to and until January 1, 1896, said plaintiff gave his entire time and attention to the matters provided for in said contract, and did all things in accordance with the terms thereof. The defendants did not have orders for work for the year 1895 amounting to $5,000, but their orders at that time amounted to $4,869. There was a misunderstanding between the plaintiff and defendants as to the condition of the aforesaid business as to the amount said firm would get to do, and in the amount of indebtedness of said defendants, and in the amount of the bills and accounts receivable, in this: that many of the bills and accounts receivable mentioned in said contract were totally bad, and were never paid. The stock on hand, represented by said defendants in said contract to be worth $4,217.62, was substantially correct.

The business of said defendants during all said time from February 18, 1895, until January 1, 1896, was wholly unproductive and unprofitable, and was constantly on a losing basis, and on said August 1, 1895, the plaintiff desired to discontinue his connection with the business of said defendants on January 1, 1896, and did on said August 1, 1895, notify said defendants that he would not enter into the partnership agreement according to the terms of said con-

tract, and notified them that said contract would be at an end on said January 1, 1896. Said contract was on said last-mentioned date terminated by agreement of said parties, and the plaintiff never became a partner of the business mentioned in said contract. On said January 1, 1896, said plaintiff demanded of the defendants the payment to him of said sum of $2,000 which he had paid them according to the terms of the contract aforesaid, together with the interest due thereon, and the defendants refused to pay said sum, or any part thereof, except, on April 10, 1897, plaintiff was paid the sum of $656. The court further found that the defendants, and each of them, were indebted to the plaintiff in the sum of $1,344, with interest on $2,000 at the rate of 10 per cent. per annum from February 18, 1896, up to April 10, 1897, and ordered payment accordingly. Judgment having been entered, the defendant Singer alone appeals therefrom.

There is no question as to the liability of Omeis and Geldrich. The case therefore hangs upon the proposition that Singer is liable upon the contract set up in the complaint. His personal signature is not affixed to the contract, but respondent's counsel contends that he was one of the persons authoritatively designated under the signature of Francis Omeis & Co., and hence a party to the contract, and that by his subsequent conduct he also adopted and ratified such contract as his own. We are of the opinion that the evidence sustains this contention. The contract recites the fact that Omeis and Singer had been and then were doing business as Francis Omeis & Co., and that as such company they and defendant Geldrich had been engaged in the marble, monumental, and stone-carving work under and known by the name of the Duluth Monumental Works, and all agreed with Tyler to continue the business under the same name in furnishing marble and monumental work, and also do stone-carving work, until January, 1896, with Geldrich as general manager, and he to devote all his time to looking after the interests of such business to the best of his skill and ability. Singer's answer was verified by his attorney, and Singer himself did not appear upon the trial, or give any testimony in the case, nor was the slightest excuse given why he did not do so. The significance of this conduct on his part may well be considered as militating against him.

Fonda v. St. Paul City Ry. Co., 71 Minn. 438, 74 N. W. 166. Although Singer was not present when the contract was signed, it was submitted to him in Tyler's presence, who saw him read it, or part of it. The witness Abell testified in regard to the matter as follows:

"Q. You heard Mr. Tyler testify in regard to the examination of this contract that has been offered in evidence by Mr. Singer? A. Yes. Q. Were you present in the room at the time of this transaction? A. I was present the day it was shown to Mr. Singer. Q. Where was that? A. 229 Lake avenue south. Q. Who was there at that time? A. Mr. Omeis, Mr. Geldrich, Mr. Tyler, Mr. Singer, and myself, if I remember correctly. Q. What was said there, as near as you can recall? A. I don't remember very much of what was said. I know I was asked to get the contract out of the safe, which I did. Q. What contract? A. The contract with Mr. Tyler between Francis Omeis & Co. and Mr. Tyler and the Duluth Monumental Works. Q. This contract that has been offered in evidence, or a duplicate of it? A. Yes. Q. And what did you do with it? A. I gave it to Mr. Omeis, if I remember correctly. I couldn't say for sure which one I handed it to. Q. What was done with it? A. It was given to Mr. Singer. Q. And what did he do with it? A. He read it. Q. You saw him read it? A. Yes."

This evidence was not contradicted, and is conclusive that Singer knew of the contents of the contract, that it recited that he was a member of both firms, and the duties and obligations of all the parties. Singer did not deny that he was a member of the firm, nor that the other partners had authority to execute it in behalf of the firm. Tyler parted with his money upon the strength of the recitals in the contract, and by his subsequent conduct Singer was a party to it. While he had no personal conversation with Singer about the business, an explanation of this is found in the fact that he looked to Geldrich all the time as the general manager of the business. Singer had an office next to that of the monumental works, but his time was generally devoted to other business. That Singer's conduct was such as to bind him as partner as to third parties we have no doubt. Knowing the contents of the contract, that business was going on evidently by virtue of its provisions, that Tyler was relying upon its terms, which bound Singer, he must be deemed to have sanctioned and confirmed such contract and acts

done thereunder, and adopted them as his own.    Other evidence in the case, to which we have not specifically alluded, confirms us in this conclusion, but, as the judgment must be affirmed, we do not deem it necessary to analyze and state it in detail.

Judgment affirmed.