R. H. EDINGTON *v.* KREIS-KEENER SHOE CO.

(*Knoxville.* September Term, 1925.)

1. **LANDLORD AND TENANT.** Landlord who knows and conceals dangerous condition of premises at time of leasing, or could have known thereof by reasonable care, is liable for resulting damages to tenant exercising reasonable care.

Landlord, leasing premises in unsafe and dangerous condition at time, is liable to tenant for resulting damages, if he knows and conceals fact, or by reasonable care and diligence could have known thereof, and tenant exercises reasonable care and diligence. (*Post*, pp. 324, 325.)

Case cited and distinguished: Hines v. Willcox, 96 Tenn., 160.

2. **APPEAL AND ERROR.**

Public Acts 1925, chapter 100, section 12, precludes appellate courts from passing on questions of fact that chancellor was not requested to find, or that he did not, in fact, pass on. (*Post*, pp. 325-330.)

Acts cited and construed: Acts 1925, ch. 100, sec. 12.

3. **CERTIORARI.**

Where chancellor's finding is not appealed from, nor concurrent finding made by court of appeals, supreme court need not read evidence to determine facts relied on. (*Post*, pp. 330, 331.)

---

*Headnotes 1. Landlord and Tenant, 36 C. J., Sections 877, 878; 2. Appeal and Error, 4 C. J., Section 3114; 3. Certiorari, 11 C. J., 363.

FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. Chas. Hays Brown, Chancellor.

Green & Webb, for R. H. Edington.

Webb, Baker & Egerton, for Kreis-Keener Shoe Co.

Mr. Justice McKinney delivered the opinion of the Court.

Complainant leased to defendant a two-story brick business house in Knoxville for eight years, at a rental of $200 per month. The lease expired July 1, 1924, at which time defendant vacated the building.

The bill in this cause was filed to recover $200 unpaid rent for the month of June, 1924.

The defendant filed a cross-bill, by which it sought to recover damages on account of injury to its stock of goods, due to the fact that in May, 1924, the ceiling of the second story of said building broke loose from its fastenings and fell upon said goods.

The chancellor entered a decree in favor of complainant for $200, with interest, and dismissed the cross-bill. Upon appeal his decree was affirmed by the court of appeals.

Counsel agree that the rule of law applicable is that stated by this court in *Hines* v. *Willcox*, 96 Tenn., 160, 33

S. W., 916 (34 L. R. A., 824, 832, 54 Am. St. Rep., 823), as follows:

"We think the great weight of authority is that, if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition, provided reasonable care and diligence is exercised by the tenant on his part."

The cause of action set forth in the cross-bill is as follows:

"Respondent is a retail shoe merchant, dealing in fine shoes and such other articles as are usually sold in a fancy retail shoe store. This was well known to complainant, and he rented said storehouse to respondent, and respondent rented said storehouse from complainant for that purpose. At the time of the renting the overhead ceiling in the second story was made of matched wooden boards, which seemed to be in perfect order and condition, and showed no indication of any concealed infirmity, and the complainant represented it to be all right. It appeared to be securely nailed to the wooden girders above, and not likely to loosen and fall to the floor. As a matter of fact, the original ceiling was of mortar or plaster, and the wooden ceiling was nailed to the plaster ceiling, and had no support except by the nails driven through it and into the plaster. This condition was not suspected, and could not have been disclosed, except by tearing off some of the wooden ceiling, so that it could be inspected. Respondent is informed and believes that before said wooden ceiling was put on, the roof of the store

leaked, and was defective, and leaked upon the upper surface of said plaster, and dripped through the plastering to the floor and upon any goods or merchandise on that floor. The wooden ceiling was put up to obviate this difficulty, as respondent supposes. However, after respondent leased said premises, with the wooden ceiling upon it, the roof continued to leak in every heavy rain, and the water dripped upon and through the plastering and through the wooden ceiling and down upon the goods of respondent.

"Respondent invariably reported the leak, when it occurred, to the complainant, and demanded that it be protected from the injury. Complainant invariably promised, agreed, and contracted to stop the leaks and protect respondent, and invariably brought workmen and had work done on the roof. This work was invariably ineffectual to stop said leaks against the frequent hard rains, and complainant's contract to stop the leaks was invariably breached.

"Finally the respondent's term expired July 1, 1924, and, in anticipation thereof, respondent in June, 1924, contracted for another store, the lease to begin July 1, 1924. In the meantime respondent arranged for a closing out sale of its stock of goods, and employed an expert firm of Minneapolis to take charge of the sale, and said firm sent their man, and he was on the grounds. The goods were laid out and being arranged for easy examination of the customers. Suddenly, on or about May 28, 1924, said wooden ceiling collapsed and fell to the floor, bringing down with it the plaster ceiling to which it was attached; crushing the spread-out goods, filling them with lime and sand, smashing the store fix-

tures and furniture, causing damages to respondent amounting to $7,599.60. An itemized statement of said damages is filed herewith as exhibit hereto and a part hereof, marked Exhibit A.

"Complainant, while recognizing his contract obligation to keep said roof in repair and protect respondent's property from damage, nevertheless refuses to pay respondent's said loss upon the alleged false ground that respondent suffered no damage from the falling of said ceiling."

It will be observed that the cross-bill does not aver that the premises were in an unsafe and dangerous condition at the time of the execution of the lease, and that complainant knew of said condition, or by the exercise of reasonable care and diligence could have known of same.

The theory of the cross-bill seems to be that the ceiling gave way as a result of continued leakage subsequent to the execution of the lease, and upon this question the other courts concurred in finding that "defendant's opportunities for knowing whether or not the said ceiling was insecure, unsafe, and unsound were equal to, or greater than, complainant's opportunities for ascertaining whether or not the ceiling was insecure, unsafe, and unsound; that complainant did not know, and had no reason to believe, that said ceiling was insecure, unsafe, and unsound."

Counsel for the defendant, in their brief, say:

"We concede that the concurrent finding that complainant did not actually 'know' the condition of the ceiling is a concurrent finding of fact, and is conclusive. But the concurrent finding that complainant had 'no reason

to believe' that there was any infirmity in the ceiling is a question of law, and is open to review by your honors.''

Counsel do not question the concurrent finding that defendant's opportunities for knowing the condition of the ceiling were ''equal to or greater than complainant's'' *subsequent to the lease* (italics ours), but insist that complainant had a greater reason to believe the ceiling insecure due to the fact that, when a new roof was placed on the building twenty-seven years previously, complainant became aware that the original ceiling was constructed of lathes and plaster, over which a wooden ceiling had been nailed to the lathes, and due to the further fact that he knew that during these years, when it would rain, water would leak through the ceiling, and thereby weaken and damage it.

In the first place, no such state of facts is alleged in the cross-bill.

In the second place, the chancellor was not requested to find any such facts.

With a view of relieving this court, as far as possible, of reading voluminous records in chancery causes upon questions of fact, and thereby enabling it to expedite the business before the court, the legislature, in the act reorganizing the appellate court system, chapter 100, Public Acts of 1925, section 12, provided:

''In all cases tried on the facts in a chancery court and afterwards brought for review to the court of appeals, both the chancellor and the court of appeals shall, to the extent that the facts are not stipulated or are not concluded by the findings of a jury, make and file written findings of fact, which shall thereupon become a part of the record; provided that before any such findings shall

become final in either court, reasonable opportunity shall be afforded the parties to examine the findings and to ask for different or additional findings; and provided, further, that in the chancery court the findings may be incorporated in the decree, but opportunity shall be given the parties to be heard in respect of said findings to be so incorporated in such decree; and provided further, that where there has been a concurrent finding of the master and chancellor which under the principles now obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding. To the extent that the findings of the two courts concur, they shall, if there be any evidence to support them, be conclusive upon any review of the facts in the supreme court; but to the extent that they do not concur, they shall be open to examination in that court. The court of appeals shall file its findings at the same time that it renders its decisions. It shall be the duty of chancellors, except where the findings are or have been incorporated in the decree as above provided, to file their findings of fact within thirty days after appeal or appeal in the nature of a writ of error has been perfected, and the clerk shall then give notice thereof to the parties or their counsel, who shall have the right by petition to ask for different or additional findings; and, if no such petition shall be filed within five days after such notice, unless the time shall be extended by order of the court, the findings shall not be further questioned in that court; provided, however, that the time within which such petition may be filed shall in no event be less than five days from the granting of the appeal or appeal in error. For the purposes herein stated the cause shall remain in the

chancery court even after the appeal has been perfected. Likewise, before a record shall be certified for writ of error, application must be made to the chancellor for his findings of fact, unless the same have been incorporated in the decree as above provided, and the same precedure shall be in substance followed as is prescribed above, and the findings shall be incorporated with the record. The same rules and practice shall govern with respect to cases tried on the facts in county courts and thence brought direct to the court of appeals. The provisions of this section as to a finding of facts shall not apply where, before it is made up, the judge who tried the case has died or has gone out of office, and in such case the clerk shall include in the record a certificate to this effect.''

This provision of the act is clear and unambiguous, and precludes the appellate courts from passing upon any questions of fact that the chancellor was not requested to find, or that he did not, in fact, pass upon.

In the instant cause the chancellor neither passed upon, nor was he requested to find, the facts now relied upon by the defendant.

The complainant contends that such facts do not appear in the transcript.

A determination of this issue would require us to read nearly 200 pages of testimony, while a finding by the chancellor, unappealed from, or a concurrent finding by the chancellor and the court of appeals, would have made this unnecessary. It is unusual for the chancellor and the court of appeals to differ as to facts.

This cause illustrates the practicability of the rule and its usefulness, and its enforcement will result in conserv-

Edington v. Kreis-Keener Shoe Co.

ing the time of this court, as was contemplated by the act.

Where the chancellor finds a certain fact one way, and the court of appeals a different way, this court will, necessarily, have to read the evidence and determine the fact.

For the reasons stated, we find no error in the decree of the court of appeals, and the petition for writ of *certiorari* will be denied.