## EPSTEIN, HENNING & CO. v. NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY.

Middle Section.     December 23, 1926.

Petition for Certiorari denied by Supreme Court April 9, 1927.

1. **Carriers. A carrier failing to notify the shipper of consignee's refusal to accept shipment is not liable for damages for breach of contract of carriage.**
   When goods, sent by a common carrier, have arrived at their destination and been tendered to, and refused by, the consignee, the contract for their carriage has been performed. The carrier may then retain or store the goods for the use of the owner; but if he retain the custody of them, it is as depository and not as carrier. As such depository, there being no agreement for compensation, he is liable only for gross negligence in regard to them.

2. **Carriers. A carrier is required to use reasonable diligence to protect property refused by consignee.**
   Where a consignee refused to receive goods from a carrier, the carrier has no right to abandon the goods to destruction or unnecessarily to expose them to loss or damage.

3. **Carriers. Carriers duty to notify shipper not affected by the Carmack Amendment.**
   The purpose of the Carmack Amendment was not to impose any new duties on the part of the connecting or terminal carrier and does not affect the duty of the terminal carrier with respect to notice to the consignor in case goods are refused by the consignee.

|4. **Carriers. Private rules of a carrier regulating the duty of its servants does not affect its liability to shippers.**
   Where the carrier had a rule that in case freight was refused by the consignee the shipper should be immediately notified held that this rule did not affect the carrier's liability in regard to notifying the shipper and the shipper could not recover because of a breach of the rule on the part of the carrier.

5. **Master and servant. Rule of a master regulating the conduct of his servants does not fix the standard of his duty to others.**
   Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public. The latter, as far as they go, fix the standard of duty toward those whom they were intended to protect, and a violation of them is negligence in law or per se. But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law required; and whether a certain course of conduct is negligent or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.

Appeal from Part II, Chancery Court, Davidson County; Hon. James B. Newman, Chancellor.

Reversed and dismissed.

Clarence T. Boyd and Currell Vance, of Nashville, for appellant.
William Waller and Seth M. Walker, of Nashville, for appellee.

FAW, P. J.  Epstein, Henning & Co. is the trade name under which J. H. Epstein conducts a wholesale mercantile business in the City of Nashville, Tennessee. This suit was brought by J. H. Epstein against the Nashville, Chattanooga & St. Louis Railway Company in the chancery court of Davidson county, Part II, on December 13, 1922, and was thereafter tried in that court on bill, answer and proof filed on behalf of the parties, respectively.

The Chancellor's "findings of fact and opinion" filed in the cause were adverse to the defendant Railway Company, and the defendant filed a petition for additional findings of fact, which petition was denied by the Chancellor with the statement in his decree that "the court is only required to find the controlling and determinative facts in the case, and not facts that are immaterial, incidental or subordinate."

The statement of the Chancellor just quoted embodies a commendable rule of practice. However, we are not called upon to determine whether or not it was properly applied in this case, for the reason that the defendant has not assigned error upon the action of the Chancellor in denying his petition for an additional finding of facts. In the absence of an assignment of error complaining of the Chancellor's denial of defendant's petition, it will be presumed that the ruling was proper. Denton v. Woods, 86 Tenn., 37, 40, 5 S. W., 489; Eddington v. Kreis-Keener Shoe Co. (Supreme Court of Tenn., May 24, 1926), 283 S. W., 987, 989.

The written opinion of the Chancellor, which includes his findings of fact, is, in full, as follows:

"This is an action to recover damages for failure of the delivering carrier to notify the consignor, Epstein, Henning & Company, of the refusal of the consignee, Sam B. Eisman, to accept delivery of a shipment of goods, made from Nashville, Tennessee, to Columbia, Mississippi. The controlling facts follow:

"On August 24, 1920, complainant delivered to the defendant, in Nashville, Tennessee, two boxes of merchandise for interstate shipment to Sam B. Eisman, a merchant at Columbia, Mississippi. The shipment was made on straight bills of lading and arrived at Columbia on September 8, 1920, being fifteen days in transit. Upon their arrival, the consignee refused to accept the shipment, and thereupon the delivering carrier, the Gulf & Ship Island R. R. Co., notified the Dedham Furnishing Co., of Dedham, Mass., of the refusal of such shipment by the consignee. The boxes containing the goods were plainly marked 'Sam B. Eisman, Columbia, Miss., from Epstein, Henning & Co., of Nashville, Tennessee.' The de-

livering carrier insists that the name ''Dedham Furnishing Co., Dedham, Mass.,' appeared on the boxes containing these goods, and notice was given to this company, but when the boxes came back to Nashville, parties who examined them failed to discover such name thereon. No notice of the refusal of these goods was given complainant by the delivering carrier.

''After the goods were refused by the consignee, the railroad company permitted them to remain in the depot unclaimed and undisposed of until December 6, 1920, when a traveling salesman of the complainant discovered that they had not been delivered and were still in the depot.

''On December 15, 1920, these goods were returned to Epstein, Henning & Co., over the Tennessee Central Railroad, and reached Nashville about fifteen days later—December 30, 1920. Both the initial and delivering carriers were members of the American Railroad Association, Freight Claim Division, and were operating under rules which required them to give notice to the consignor of freight that was refused or unclaimed.

''Rule 87, page 83, American Railroad Association, Freight Claim Division, is as follows: 'When non-perishable less than carload freight is refused at destination, it should be reported within five days after refusal.'

''Rule 2, section b, is as follows: 'Refused unclaimed freight. Where shipments have been plainly marked with consignor's name and address, preceded by the word ''from,'' notice shall be immediately sent or given consignor of the refusal, of less than carload shipment. Any unclaimed less than carload shipment shall be treated as refused after fifteen calendar days after expiration of free time.'

''J. H. Epstein was engaged in the wholesale ladies' ready-to-wear and furnishing business in Nashville, Tennessee, under the firm name of Epstein, Henning & Co. He was a large shipper of merchandise, in wholesale quantities, throughout Tennessee and the south.

The Interstate Commerce Commission, in the case of Kehoe v. N. C. & St. L. Ry., 14 Int. Com. Rep., 555-6, said:

.'' 'It is probably in the interest of the public that the consignor should be promptly notified when a shipment is not delivered.'

''The Carmack amendment material to the present case is as follows:

'' 'That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property

may be delivered or over whose line or lines such property may pass.'

"See 4 Fed. Stats. Anno., 499 (2nd Ed.).

"The authorities construing this amendment are marshaled in the case of Stoddard Lumber Co. v. Oregon-Wash. R. & Nav. Co., 4 A. L. R., 1280-1282. This opinion is by Justice McCamant, now U. S. Circuit Judge of the Ninth Circuit.

"There are two lines of authority in this country,—one holding that the duty rests upon the carrier to notify the consignor within a reasonable time of the refusal, and the other holding that the duty of the carrier is variable, depending upon the circumstances. The weight of authority sustains the principle that the duty rests upon the carrier to exercise due diligence to notify the consignor within a reasonable time after such refusal. See authorities cited in Stoddard Lumber Co., case, supra, p. 1278.

"In 1869, in the case of Kremer v. Southern Express Co., 6 Cold., 360-2, our Supreme Court, speaking through Andrews, justice, adopted the variable rule, holding generally there was no duty resting upon the carrier to notify the consignor of such refusal, but likewise ruling that there might be cases in which it would be a want of ordinary care and diligence to fail to give notice to the consignor of the non-acceptance of the property by the consignee. This case is out of harmony with the weight of American authorities, both case and text, and is clearly distinguishable from the case under consideration.

"In the Kremer case, there was no rule requiring the delivering carrier to give notice to the consignor, nor was the Carmack amendment, with the construction placed thereon by the Supreme Court, in force.

"In the case at bar the consignor was a large shipper to all points throughout Tennessee and the south. The delivering and initial carriers were both operating under the rules quoted, and in this case, the former gave notice to the wrong person of the refusal of the shipment. The shipment was an interstate commerce shipment, controlled by the principles of the Carmack amendment, and it was in the interest of the public, as stated by the Interstate Commerce Commission, that the consignor in such shipment should be promptly notified when a shipment is not delivered.

"The failure of the delivering carrier to give the consignor notice of the refusal of the consignee to accept the shipment, was a want of ordinary care and diligence, and under the facts disclosed by this record, gross negligence. It was by reason of the contract of shipment that the goods came into the delivering carrier's hands, and as part of this contract in law, the carrier was required to exercise due diligence to inform the consignor of the refusal. The fail-

ure so to do renders the initial carrier liable in damages for such action.

"The damages in this case spring from the contract of shipment, and the measure thereof is the difference between the value of the goods at Columbia, Miss., five days after the date they reached there, September 8, 1920, which would be September 13, 1920, and their value at Nashville, Tennessee, on the day they were received by the consignor in Nashville, December 30, 1920.

"The proof not showing the amount of such damages, it will be necessary to order a reference to ascertain the same.

"Decree accordingly.

"NEWMAN, CHANCELLOR."

Pursuant to the foregoing findings and opinion of the Chancellor, a decree was entered in which the court ordered, adjudged and decreed as follows:

"1.   That the defendant has breached the contract of shipment and is liable in damages to the complainant for the difference between the value of the goods at Columbia, Mississippi, five days after the date they reached there, September 8, 1920, which would be September 13, 1920, and their value at Nashville, Tennessee, on the day they were received by the consignor, December 30, 1920.

"2.   That this is a proper case for a reference, and the cause is hereby referred to the master, who will, from the proof on file and such proof as may be taken and filed, report as soon as practicable on the following questions:

"(a)   What was the difference between the value of the merchandise involved at Columbia, Miss., September 13, 1920, and Nashville, Tennessee, December 30, 1920;

"(b)   What demurrage and storage charges, if any, was complainant compelled to pay on said shipment by reason of the failure to receive notice of the refusal of this shipment by the consignee."

Proof was taken under the reference ordered as aforesaid, and the master reported upon the first item of reference, that the value of the merchandise involved, at Columbia, Mississippi, on December 13, 1920, including the usual per cent of profit derived on such goods by wholesale merchants in making sales to retailers, was $1394, and the value of the same merchandise, at Nashville, Tennessee, on December 30, 1920, was $552.75, as the market for said merchandise had materially declined, due to the change in the season and a general deflation in prices of that character of merchandise, between the aforesaid dates, and that the difference in the aforesaid values of the merchandise involved between the dates mentioned amounts to the sum of $842.25.

Upon the second item of the reference the master reported that the complainant was compelled to pay storage charges amounting to the sum of $24.17, by reason of the failure to accept the shipment in question, and that the demurrage charges, if any, do not appear in the proof.

The defendant excepted to the report of the master, but the exceptions were overruled and the report was confirmed. Thereupon the Chancellor decreed that the complainant recover of the defendant the sum of $866.42, with interest from December 13, 1922, the date of the filing of the bill, amounting to $161.44, together aggregating $1027.86, and the costs of the cause, for which execution was awarded.

The defendant excepted to the action of the court and prayed, obtained and perfected an appeal to this court and has assigned errors here.

There are, in form, six assignments of error. Through its first, second and sixth assignments the defendant asserts that the Chancellor erred in holding that defendant breached the contract of shipment and was liable to complainant therefor, and in granting a decree in favor of complainant and against defendant for $1027.26. Through these assignments defendant insists that it was not liable to complainant in any amount and that the Chancellor should have dismissed complainant's bill. The third assignment complains of the order of reference, and the fourth and fifth assignments challenge the action of the Chancellor in overruling defendant's first and second exceptions to the report of the Clerk & Master.

We are not able to agree with the learned Chancellor in his conclusion that the case at bar may be differentiated from the case of Kremer v. Southern Express Company, 6 Cold., 356. Kremer sought to recover damages for the alleged failure to notify him within a reasonable time of the refusal of the consignee to accept and pay for a box of goods shipped (C. O. D.) by Kremer from Memphis, Tennessee, to one Donally, at Cairo, Ill. The judgment of the circuit court was in favor of the Express Company and Kremer appealed.

In the opinion in the Kremer case it is said that the goods ''consisted of winter garments for ladies, which the plaintiff's witness testified had, at the date of the offer to return them, become unsalable, in consequence of the lateness of the season; that they would probably have to be kept over for another season; and that, in the meantime, fashions may change.'' From the statement just quoted it is seen that the goods shipped and the damages suffered in Kremer's case were of the same character as in the present case.

In the Kremer case the Supreme Court held that, in failing to give notice to the shipper that the consignee had refused to accept the shipment, the Express Company was not guilty of breach of the contract of carriage or of breach of its legal duty as a common carrier. In the opinion, the court (after citing and discussing authorities) said:

"When goods, sent by a common carrier, have arrived at their destination, and been tendered to, and refused by, the consignee, the contract for their carriage has been performed. The carrier may then retain or store the goods for the use of the owner; but if he retain the custody of them, it is as depositary and not as carrier. As such depositary, there being no agreement for compensation, he is liable only for gross negligence in regard to them.

"But he has no right to abandon the goods to destruction, or unnecessarily to expose them to loss or damage. And there might, possibly, be cases in which the nature of the property conveyed, or the circumstances attending the particular case, would render it a want of ordinary care and diligence to fail to give notice to the consignor of the non-acceptance of the property by the consignee. But, if the obligation to give such notice exists in any case, it arises, not from the contract of carriage, but from the fact that the goods being lawfully in the custody of the carrier for a particular purpose, and that purpose having failed through an unforeseen contingency, the law throws upon the party who has assumed the custody, the duty of exercising reasonable diligence to protect the property so long as his custody continues.

"But there is no rule of law which requires the carrier to give such notice in ordinary cases. The fact that the property transported has fluctuated, or is liable to fluctuate, in price, would not, ordinarily, take the case out of the general rule. Such fluctuations are constant, and within the contemplation of all business men. The liability of the carrier for failure to give such notice, could only arise where such failure would be evidence of gross negligence on his part, in the discharge of the duty above-mentioned, of protecting the property in his custody. And there might be cases, as, for instance, the undertaking to transport and demand payment of a bill or note, in which an undertaking would be implied, from the contract of agency, to give the notices necessary in case of non-payment, to bind the indorsers.

"I do not think that the fact that the Express Company, in the present instance, assumed the duty of collecting the price of the goods, in addition to its duty as a carrier, adds to or qualifies their obligation as to giving notice of non-acceptance. A duty of agency was thereby superadded to the obligation to transport and deliver; but a general agency was not created thereby.

"I see no evidence in this record, which, upon the principles above explained, would have authorized a judgment for the plaintiff; and the judgment must be affirmed."

The facts of the case now before us for decision bring it squarely within the ruling in the Kremer case and, so far as we are informed, the Kremer case has not been overruled or modified by our Supreme Court.

As stated by the Chancellor, there are two lines of authority in the United States upon the legal question here presented. In 10 Corpus Juris, at page 270 (sec. 387), it is said: "In addition to warehousing the goods, the carrier is ordinarily chargeable with the duty of notifying the consignor of the consignee's failure or refusal to accept the goods, although, according to some cases, such notice is necessary only where it would be a failure to exercise due care in the protection of the goods not to give it;" and in support of the last of the two rules thus stated the case of Kremer v. Southern Express Company, supra, is cited.

In the annotation found in 4 A. L. R., at page 1285, et seq., (to which the Chancellor refers) the annotator says, with reference to cases where the shipper is not the consignee, that "the decisions are not in entire harmony as to whether a carrier, in addition to warehousing a shipment consigned to one other than the consignor after the consignee's refusal to receive it, owes the duty of notifying the consignor of the rejection of the goods." Cases affirming and others denying the existence of such positive duty on the part of the carrier are then reviewed, and, among other cases holding the negative of the proposition, the annotator quotes at length from the Tennessee case of Kremer v. Express Company, supra.

Unless and until the Supreme Court of Tennessee overrules or modifies the opinion in the Kremer case, it is our duty to follow it; and for us to endeavor to ascertain the weight of authority in other jurisdictions concerning the rule there announced would be a work of supererogation.

The bill of lading issued by defendant Railway Company to complainant Epstein, Henning & Co. contains no stipulation obligating the defendant, or the terminal carrier, to give notice to the shipper of a failure or refusal of the consignee to accept the shipment.

The Carmack Amendment does not, in our opinion, enlarge the duty of the terminal carrier with respect to notice to the consignor in a case such as the one we have here. The purpose and effect of the Carmack Amendment was to impose upon the initial carrier a liability for any breach of legal duty on the part of its connecting carriers, and not to create new duties to the shipper on the part of any connecting or terminal carrier. "The Carmack Amendment has not changed the common law doctrine in respect to a carrier's liability for loss occurring on its own line." Roberts Federal Liabilities of Carriers, Vol. 1, sec. 328; See N. O. & T. P. R. Co. v. Rankin,

241 U. S., 319, 60 L. Ed., 1022, 1026; Same case, L. R. A., 1917A, 265, 269.

The Oregon court, in the case of Stoddard Lumber Co. v. Oregon-Washington R. & Nav. Co., 84 Oregon 399, 4 A. L. R., 1275, cited in the. Chancellor's opinion, quotes the Interstate Commerce Commission as saying (in the case of Kehoe v. Nashville C. & St. L. R. Co., 14 Int. Com. Rep., 555, 556): "It is in the interest of the public that the consignor should be promptly notified when the shipment is not delivered."

The statement just quoted is a part of a sentence used by the Interstate Commerce Commission in an opinion announcing its refusal to formulate a rule under which a carrier should not charge demurrage on a rejected shipment before the shipper was notified of the rejectment. The entire sentence, from which the quoted excerpt is taken, reads as follows: "While it is probably in the interest of the public that the consignor should be promptly notified when the shipment is not delivered, and while the commission would favor. any reasonable regulation in that regard, yet it is doubtful whether the method now in effect by the Central of Georgia Railway would be improved upon the adoption of the suggestion of complainants." We think it obvious that the opinion of the Interstate Commerce Commission in the Kehoe case, supra, affords no support for the conclusion that the Carmack Amendment, or any other provision of the Interstate Commerce Act, imposes upon the carrier the duty of notifying the consignor when the consignee refuses to receive the shipment, or that the Interstate Commerce Commission has so construed the Federal laws governing interstate shipments, or that the Interstate Commerce Commission has promulgated a rule requiring such notice.

We are also unable to concur in the view that the existence of the rule of the American Railroad Association, Freight Claim Division, quoted in the Chancellor's findings, supra, renders the holding in the Kremer case inapplicable to the instant case. These rules were prescribed by the carriers for the government of their employees, and there is no evidence that the complainant had any knowledge of their existence; hence his conduct could not have been in any way influenced by them. Speaking with reference to rules of the railway company which were unknown to the plaintiff who was undertaking to fix liability for negligence upon a railroad, company, the Supreme Court of Minnesota said:

"Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public. The latter, as far as they go, fix the standard of duty

toward those whom they were intended to protect, and a violation of them is negligence in law or per se. But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.

"Under some circumstances, such rules may become an important factor in the application of legal principles to the conduct of a person; as, for example, where the rule was known to him, and he governed, or had a right to govern, his conduct accordingly. Such was the case of Smithson v. Chicago Great Western, 71 Minn., 216. In that case the rule was known to, and obligatory upon, both the party injured and the party guilty of the alleged negligent act. Each was bound to know that the other might and could regulate his own conduct on the assumption that he would obey the rule. Some of the cases cited by counsel come within this class, and hence have no application here. Others were cases of servants against their masters, in which the gist of the action was the failure of the master to perform his absolute duty to his servants to make and promulgate rules which, if observed, would give reasonable protection to his employees. These cases are equally inapplicable. Some are cases of municipal ordinances, which, for reasons already given, are not in point.

"There are a few cases which support plaintiff's contention, but in none of them is the question considered or discussed at any length, and in some of them no reason whatever is given for the decision. The only reason assigned in any of them why such evidence is admissible is that it is in the nature of an admission by the party promulgating the rule that reasonable care required the exercise of all the precautions therein prescribed: Georgia R. R. Co. v. Williams, 74 Ga., 723; Lake Shore, etc., Ry. Co. v. Ward, 135 Ill., 511. The fallaciousness and unfairness of any such doctrine ought to be apparent on a moment's reflection. The effect of it is, that the more cautious and careful a man is in the adoption of rules in the management of his business in order to protect others, the worse he is off, and the higher the degree of care he is bound to exercise. A person may, out of abundant caution, adopt rules requiring of his employees a much higher degree of care than the law imposes. This is a practice that ought to be encouraged, and not discouraged. But, if the adoption of such a course is to be used against him as an admission, he would naturally find it to his interest not to adopt

any rules at all.'' Fonda v. St. Paul City Railway Co., 71 Minn., 438, 70 Am. St. R., 341, 347-8.

The language we have just quoted from the opinion of the Minnesota court was adopted by the Supreme Court of Michigan in the case of McKernan v. Detroit Citizens Street Railway Co. (Mich.), 68 L. R. A., 347, 351. See also Chicago, B. & Q. Railroad Co. v. Lampman (Wyo.), 104 Pac., 533, 536-7; L. & N. R. Co. v. Vaughn's Admr. (Ky.), 210 S. W., 938, 942. Finding no material point of differentiation between the present case and the Kremer case, supra, we must sustain the first, second and sixth assignments of error. In this view, the third, fourth and fifth assignments become immaterial and their consideration is pretermitted.

It results that the decree of the Chancellor is reversed and the complainant's bill is dismissed. The costs of the cause in the chancery court and in this court will be adjudged against complainant and his prosecution surety below. .

Crownover and DeWitt, JJ., concur.