**Charles Edward SNIDER, Jr. and Judy May Snider, Plaintiffs/Appellants,**

v.

**Pernell SNIDER, Charles Collier, Dafney Briley, Warren County School Board, and Warren County, Tennessee, Defendants/Appellees.**

Court of Appeals of Tennessee, Middle Section.

Feb. 3, 1993.

Permission to Appeal Denied by Supreme Court May 24, 1993.

Frank Buck, Smithville, Bernard K. Smith, McMinnville, for plaintiffs/appellants.

Larry B. Stanley, McMinnville, for defendants/appellees.

## OPINION

CANTRELL, Judge.

The primary question in this appeal is whether a school principal and his secretary were negligent in releasing an eleven-year-old child from school in the custody of her uncle, and as a consequence, are they and the county liable for the child's injuries inflicted by the uncle, in a brutal sexual battery. The Circuit Court of Warren County dismissed the action. We affirm.

### I.

On October 17, 1990, Kelly Marie Snider, an eleven year old student at Northside Elementary School in Warren County, went to the school office complaining of being ill. Unable to reach her father by telephone she asked the secretary at her father's place of employment to tell one of the father's co-workers, Mrs. Edna Wanamaker, to come pick her up. Mrs. Wanamaker had previously picked the child up at school as a favor to the father, but on this occasion she was unable to leave work so the child went back to her room.

Pernell Snider, a brother of the child's father, also worked where the father and Mrs. Wanamaker were employed. Mrs. Wanamaker asked Pernell Snider to pick Kelly up at school and take her home since Kelly's father could not be located. Pernell Snider went to the school office and signed Kelly out. When Kelly arrived at the office she did not exhibit any fear of her uncle and willingly left school with him.

Pernell Snider took Kelly to a secluded area and raped her, causing serious physical and emotional injuries.

Once before, earlier in the same school year, Kelly had signed her mother's name

to the sign-out sheet in the school office and had left school. When she did not come home on the bus, her parents became alarmed but subsequently located her at the home of a distant relative who lived near the school. Kelly's parents testified that after that event, they instructed the school authorities not to let anyone check Kelly out of school except her parents. The principal testified the parents told him not to let Kelly check herself out, but they did not tell him Kelly could only be released to them.

The year before, for the 1989–90 school year, the former principal of Northside Elementary School had compiled a handbook setting forth some rules for the operation of the school. With respect to a policy of early dismissal the handbook provided: "When a student leaves school between 7:45 a.m. and 2:15 p.m., he/she must be signed out in the school office by the parent, guardian or parent designee."

In addition, the Warren County School Board had compiled and published the following policy with respect to early dismissal: "Students shall not be permitted to leave school premises during the school day without request of the parent/guardian and the approval of the principal."

The trial judge held that the defendants were not negligent in releasing Kelly to the custody of her uncle and that the injuries caused by her uncle's criminal assault were unforeseeable.

## II.

■ Schools, their teachers, and administrators have a duty to exercise ordinary care for the safety of the students. *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 870 (Tenn.App. 1985). Ordinary care is the care an ordinarily prudent person would take under the circumstances. *Hawkins County v. Davis*, 216 Tenn. 262, 266, 391 S.W.2d 658, 660 (1965). The appellants insist, however, that beyond ordinary care, the defendants had a specific duty in this case, referring to the release policy established by the school board, the local school handbook, and the specific instructions given by the parents

after the August incident when Kelly signed herself out and left school on her own.

■ We do not think the handbook for the prior year is applicable. It had been issued by a former principal for the year 1989–90, and the only evidence in the record concerning its applicability is the new principal's testimony that the handbook was not in effect for the 1990–91 school year.

Although there is a dispute in the record concerning what Kelly's parents told the principal after the August incident—and we have our doubts that parents could unilaterally impose higher standards on school officials than that imposed by the general law—counsel for the parents conceded that the conditions they imposed on the school were substantially the same as the statement in the school board policy; i.e., that Kelly should not be released without the request of her parents. From that, the parents argue that since Kelly was instead released to her uncle the school officials and the county are liable for her injuries.

■ In this argument, the appellants assume that a violation of the school board policy is negligence per se. We do not think, however, that the record supports that assumption. Not every violation of a statute or ordinance is negligence per se; it depends on the type of statute or ordinance and the reason it was adopted. 57A Am. Jur.2d *Negligence* §§ 770, 794 (2d ed. 1989). A violation of one's own rules presents even more serious problems. In *Epstein, Henning & Co. v. Nashville Chatt. & St. L. Ry. Co.*, 4 Tenn.App. 412 (1926), the court, quoting from a Minnesota case, said:

Private rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public. The latter, as far as they go, fix the standard of duty toward those whom they were intended to protect, and a violation of them is negligence in law or per

se. But a person cannot, by the adoption of private rules, fix the standard of his duty to others. That is fixed by law, either statutory or common. Such rules may require more, or they may require less, than the law requires; and whether a certain course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party.

*Id.* at 420–421.

On the question as to whether such rules were admissible:

There are a few cases which support plaintiff's contention, but in none of them is the question considered or discussed at any length, and in some of them no reason whatever is given for the decision. The only reason assigned in any of them why such evidence is admissible is that it is in the nature of an admission by the party promulgating the rule that reasonable care required the exercise of all the precautions therein prescribed: *Georgia R. R. Co. v. Williams,* 74 Ga., 723; *Lake Shore, etc., Ry. Co. v. Ward,* 135 Ill., 511 [26 N.E. 520]. The fallaciousness and unfairness of any such doctrine ought to be apparent on a moment's reflection. The effect of it is, that the more cautious and careful a man is in the adoption of rules in the management of his business in order to protect others, the worse he is off, and the higher the degree of care he is bound to exercise. A person may, out of abundant caution, adopt rules requiring of his employees a much higher degree of care than the law imposes. This is a practice that ought to be encouraged, and not discouraged. But, if the adoption of such a course is to be used against him as an admission, he would naturally find it to his interest not to adopt any rules at all. (Citations omitted)

4 Tenn.App. at 421–422.

In *Gross v. Nashville Gas Co.,* 608 S.W.2d 860 (Tenn.App.1980), this court held that the safety rules of a corporation could be admitted, not as having force of law and thus establishing negligence per se, but as evidence of whether the appellants exercised proper care for their own safety when they were aware that this conduct violated the safety rules. *Id.* at 870.

In *Lazy Seven Coal Sales, Inc. v. Stone & Hines, P.C.,* 813 S.W.2d 400 (Tenn.1991), our Supreme Court held that the Code of Professional Responsibility adopted by the Supreme Court and applicable to members of the bar did not establish a standard of care. *Id.* at 404. The standard remained that of a person exercising reasonable degree of care and skill. *Id.* 405; *See Spalding v. Davis,* 674 S.W.2d 710, 714 (Tenn. 1984).

■ Under these authorities we are of the opinion that a violation of the school board policy did not amount to negligence per se. Even if a violation could be introduced as some evidence of negligence on the part of the defendants, under all of the circumstances in this case we are of the opinion that the evidence does not preponderate against the finding of the trial judge that the defendants were not negligent. Here, an eleven-year-old child complained of being ill and attempted to call her parents in order to be taken home. Subsequently, the child's uncle showed up to sign her out and the child showed no hesitancy in leaving with him. Under these circumstances the school officials had no notice that the person signing the child out posed a threat. Thus, we do not think the release of the child amounted to negligence.

### III.

Assuming that the conduct of the defendants did amount to negligence, we think the plaintiffs' case fails for the other reason cited by the trial judge: the defendants' negligence was not the proximate cause of the injury because the injury was entirely unforeseeable. In *McClenahan v. Cooley,* 806 S.W.2d 767 (Tenn.1991), the Supreme Court set out the general test for determining the existence of proximate cause as follows:

Taken as a whole, our cases suggest a three-pronged test for proximate causation: (1) the tortfeasor's conduct must have been a "substantial factor" in

bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence. (citations omitted). The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place, provided it is determined that the tortfeasor could foresee, or through the exercise of reasonable diligence should have foreseen, the general manner in which the injury or loss occurred. (citations omitted) "The fact that an accident may be freakish does not *per se* make it unpredictable or unforeseen." *City of Elizabethton v. Sluder*, 534 S.W.2d 115, 117 (Tenn.1976). It is sufficient that harm in the abstract could reasonably be foreseen. (citations omitted). Finally, proximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.

806 S.W.2d at 775.

In this case, although Kelly's parents were aware that their younger child had implicated Pernell Snider in making improper sexual advances, there is no proof in the record that the school officials were aware of that evidence. Also, the family had apparently dismissed the incident because the younger child had changed her story. But, despite the parents' knowledge of their younger child's earlier story, they testified in this case that they had no fear that Pernell Snider posed a threat to their children. The mother testified that she did not have any preference about Pernell being with the child, that the children were around him at family functions, and there was no indication that he would harm the children.

Under these circumstances we are convinced that the trial court properly ruled that the harm to Kelly was unforeseeable as to the school administrators. The court acted properly in dismissing the complaint.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Warren County for any further proceedings necessary. Tax the costs on appeal to the appellants.

TODD, P.J., and LEWIS, J., concur.