# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs November 7, 2012 Session

## SANDRA BELLANTI, ET AL. V. CITY OF MEMPHIS, TENNESSEE, A MUNICIPAL CORPORATION, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-004250-08     Robert L. Childers, Judge

### No. W2012-01623-COA-R3-CV - Filed January 30, 2013

Plaintiff motorist was seriously injured when a padlock was hurled from beneath a lawn mower operated by a City of Memphis Parks Services employee and through the window of her vehicle, striking her in the head and resulting in the loss of her left eye. The motorist and her husband filed an action for damages against the City, which was adjudicated pursuant to the Governmental Tort Liability Act. The trial court entered judgment in favor of Plaintiffs, and the City appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Michael Fletcher, Memphis, Tennessee, for the appellant, City of Memphis, Tennessee.

Thomas E. Hansom and Leigh Hansom Thomas, Memphis, Tennessee, for the appellees, Sandra Bellanti and Albert Bellanti.

## OPINION

This is the second appearance of this matter in this Court. This dispute arises from serious injuries sustained by Plaintiff Sandra Bellanti (Ms. Bellanti) in September 2007, when a padlock was launched from beneath a riding mower operated by a City of Memphis Parks Services employee while mowing a median near the intersection of Dexter Road and Dexter Lane in Memphis. The padlock broke through the side window of Ms. Bellanti's vehicle and struck her in the head, fracturing her skull, breaking her nose, and causing severe damage to her eye. After three surgeries, Ms. Bellanti lost her left eye and it was replaced

with a prosthesis. *Bellanti v. City of Memphis*, No. W2011–01917–COA–R3–CV, 2012 WL 1974220, at \*1 (Tenn. Ct. App. June 4, 2012)(hereinafter, "Bellanti I").

In August 2008, Ms. Bellanti and her husband, Albert Bellanti (Mr. Bellanti; collectively, "the Bellantis") filed an action against the City of Memphis ("the City"); Devin D. Douglas (Mr. Douglas), the mower operator; and Metalcraft of Mayville, Inc. d/b/a SCAG Power Equipment Division ("Metalcraft"), the manufacturer of the mower. In their complaint, they asserted, inter alia, that the City had failed to adequately inspect the area prior to mowing. Ms. Bellanti sought compensatory damages in the amount of $2,000,000 and punitive damages in the amount of $500,000. Mr. Bellanti sought damages in the amount of $50,000 for emotional distress and loss of consortium. *Id.*

The City filed its answer on October 15, 2008. In its answer, the City asserted the defenses of failure to state a claim, comparative fault, and the Governmental Tort Liability Act ("GTLA"). It further stated, "[t]he City hereby gives notice that it intends to rely upon such other affirmative defenses and/or claims that may become available as the case develops and reserves the right to amend its Answer to assert such defenses and/or claims." Upon motion by the City, Mr. Douglas was dismissed by consent in April 2009. The *ad damnum* was reduced to $300,000 for personal injuries and $100,000 for property damage pursuant to the GTLA. The matter was set to be heard by a jury on November 15, 2010.

On October 1, 2010, the City filed a motion for leave to amend its answer to add the defense of the public duty doctrine. The City's motion to amend was heard on December 3, and the trial court entered its order denying the motion on December 14, 2010. On December 16, 2010, the City moved the trial court for permission for interlocutory appeal of its December 14 order. Metalcraft was voluntarily dismissed in January 2011.

Following a hearing on February 4, 2011, the trial court denied the City's motion for permission for interlocutory appeal on February 22. The City subsequently filed an application for extraordinary appeal to this Court, which we denied in May 2011. In August 2011, the matter was tried without a jury and the trial court entered judgment in favor of the Bellantis. The trial court found:

> That the City of Memphis had a duty to the Plaintiffs, that the City breached that duty and that the Plaintiffs have suffered damages legally caused by the City's negligence through the negligence of the City's employees.
>
> That, because it is virtually impossible for one person to [] do a sufficient inspection of a median the size of the median at issue, the City breached its duty by assigning a single crew person to inspect the area before mowing

began.

. . . .

That the City knew or should have known that incidents of the type at issue were possible and that such knowledge satisfies the foreseeability requirement.

The trial court found that Ms. Bellanti had suffered damages in the amount of $1,980,000, but reduced the damage award to $300,000 as limited by the GTLA. It awarded Mr. Bellanti damages in the amount of $50,000 for emotional distress and suffering; loss of services, consortium and companionship; and property damage. The City filed a timely notice of appeal.

Upon review of the record, in Bellanti I, we remanded the matter to the trial court for entry of an explanation of its denial of the City's October 2010 motion to amend its answer to add the affirmative defense of the public duty doctrine. Bellanti I, 2012 WL 1974220, at * 6. On July 2, 2012, the trial court entered an order in support of its determination. In its order, the trial court stated that the City had filed its answer in the matter on October 15, 2008, and filed its motion to amend to assert the affirmative defense of the public duty doctrine on October 1, 2010. The trial court determined that the City had "waited too long to assert the affirmative defense" of the public duty doctrine. It additionally found that the amendment would have been futile because "the [p]ublic [d]uty [d]octrine does not extend to municipal land crews or grass cutting employees." The trial court adopted the transcripts of the December 2010 hearing on the City's motion and the February 2011 hearing on the City's motion for interlocutory appeal in its July 2012 order.

The City filed a notice of appeal on July 24, 2012. In August 2012, the parties filed a joint motion to supplement the record filed on appeal in Bellanti I with the record filed on appeal of the judgment on remand, to consolidate the record, and to expedite the appeal. We granted the motion to expedite on September 5, 2012. We now accordingly turn to whether the trial court erred by denying the City's motion to amend its answer to include the affirmative defense of the public duty doctrine and to the remainder of the issues raised by the parties in Bellanti I.

### Issues Presented

1. Whether the trial court erred in denying the City of Memphis's motion to amend its Answer to affirmatively plead the Public Duty Doctrine.

2. Whether the trial court erred when it failed to find that the claim of the

-3-

Plaintiffs is barred by the application of the Public Duty Doctrine to the facts presented at trial.

3. Whether the trial court erred in establishing and imposing a standard of care upon the City in its operation of picking up trash and debris prior to mowing medians.

4. Whether the evidence supports a finding that the object was present when the area was picked up or would have been found but for the negligence of the employees of the City.

5. Whether the alleged failure of the employees of the City of Memphis was the legal cause of the accident and resulting injuries to the Plaintiffs.

6. Whether the City retains immunity under Tennessee Code Annotated § 29–20–205(4) for failure to inspect or negligent inspection.

### *Standard of Review*

Appellate review of the factual findings of a trial court sitting without a jury is *de novo* upon the record, accompanied by a presumption of the correctness unless the preponderance of the evidence is otherwise. *E.g., Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012); Tenn. R.App. P. 13(d). Insofar as the trial court's factual findings are based upon its assessment of the weight and credibility of live testimony, we afford considerable deference to the trial court. Because the trial court is in the best position to assess the demeanor of witnesses and "other indicators of credibility," we will not reverse a trial court's determination of credibility absent clear and convincing evidence to the contrary. *Id*. Appellate review of a trial court's conclusions of law, however, is *de novo* with no presumption of correctness. *E.g., Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn.. 2012).

### *The City's Motion to Amend*

We turn first to whether the trial court erred by denying the City's motion to amend its answer to include the defense of the public duty doctrine. Rule 15.01 of the Tennessee Rules of Civil Procedure provides in part:

A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no

-4-

responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within 15 days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

The decision to grant or deny a motion to amend a pleading pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure is within the sound discretion of the trial court, and this Court will not reverse such a decision absent an abuse of discretion. *Conley v. Life Care Centers of Am., Inc.*, 236 S.W.3d 713, 723 (Tenn. Ct. App. 2007). A trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn.1999)). This standard does not permit an appellate court to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). Rather, the abuse of discretion standard "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). When considering a motion to amend a pleading, the trial court may consider several factors including "lack of notice, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue delay in the filing of the motion, undue prejudice to the opposing party, and futility of the proposed amendment." *Conley*, 236 S.W.3d at 723–24 (citing *Hall v. Shelby Cnty. Ret. Bd.*, 922 S.W.2d 543, 546 (Tenn. Ct. App.1995)); *see Welch v. Thuan*, 882 S.W.2d 792, 794 (Tenn. Ct. App.1994) ("The futility of an amendment is clear when granting it would prolong the litigation, but almost certainly not lead to a different ultimate result.").

In its brief, the City asserts that "not a single factor supports the denial of the motion to amend." It asserts that it gave notice in its answer that it intended to rely upon any affirmative defense that might be available and "reserved" the right to amend its answer to assert any such defense or claim; that there is no suggestion of bad faith in this case; and that although it filed its motion to amend two years after filing its answer, the City was not dilatory in its defense and the October 2012 motion to amend was the first and only motion for leave to amend. The City further asserts that the addition of the defense of the public duty doctrine would not have prejudiced Ms. Bellanti where, at the time the trial court denied the motion, "the parties had five months to develop proof" on the issue. It notes that the case ultimately was tried eight months after the City's motion to amend was denied. The City further argues that the trial court erred by determining that the public duty doctrine is not

applicable to this matter, and asserts that it is immune from liability in this case under the doctrine.

The public duty doctrine, like the Governmental Tort Liability Act ("GTLA"), is an affirmative defense. *Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998). Upon review of the record in this matter, we cannot say the trial court abused its discretion on the ground that the City "waited too long to assert the affirmative defense." Notwithstanding the City's contention that it reserved the right to rely on any defense which might become available, we observe that, assuming it would be applicable in this case, the public duty doctrine did not become available as a result of additional claims asserted by the Bellantis during the course of litigation. Rather, if the doctrine applies, it is dispositive of the issue of liability notwithstanding the GTLA.

The supreme court has explained the interplay between the Public Duty Doctrine and the GTLA as follows:

> Courts first look to the GTLA. If immunity is found under the GTLA, a court need not inquire as to whether the public duty doctrine also provides immunity. If, however, the GTLA does not provide immunity, courts may look to the general rule of immunity under the public duty doctrine. If immunity is then found under the public duty doctrine, the next inquiry is whether the special duty exception removes the immunity afforded under the public duty doctrine. The special duty exception, however, cannot be used to remove immunity afforded by the GTLA.

*Id.*

In this case, the City filed its motion to amend to include the affirmative defense fully two years after the defense became available. The Bellantis did not amend their August 2008 complaint; no additional claims or factual contentions were asserted.[1] In the interim, in May 2009 the City moved to dismiss the Bellantis' claims for negligence against Mr. Douglas on the ground that the matter was governed by the GTLA. In its motion to dismiss Mr. Douglas, the City asserted that "[i]f a governmental entity's immunity is removed for a negligent act of an employee, as it is here, the offending government employee is immunized under the GTLA from an individual-capacity claim for the same tort." In March 2009, the City moved to strike excessive *ad damnum* with respect to claims against the City, asserting that the Bellantis' claim for personal injuries was limited to $300,000 per person and that their claim for property damage was limited to $100,000 under the GTLA. Consent orders granting the

---

[1] We note that the Bellantis filed a "notice of errata" in January 2009 to correct a name.

motions were entered in April 2009. In June 2009, Metalcraft moved for summary judgment. In August 2009, the City filed a response in opposition to Metalcraft's motion, incorporating the Bellantis' arguments in opposition and asserting that significant issues of fact remained with respect to whether the mower was defective. Metalcraft's motion for summary judgment was denied in September 2009, and in March 2010 the parties entered a consent order setting the matter to be heard by a jury on November 15, 2010. As noted above, the City filed its motion to add an additional affirmative defense on October 1, 2010.

In it motion to amend, the City stated that the failure to raise the defense was an "oversight." At the December 2010 hearing on the City's motion to amend, legal counsel for the City acknowledged that it simply "erred" by not asserting the defense earlier. Additionally, although the trial court reset the matter to May 2011 before ruling on the City's motion to amend, and although the matter ultimately was heard on the merits in August 2011, when the City filed its motion to amend in October 2010 the action was set to be heard by a jury on November 15, 2010.

The City's motion was heard on December 3, and the trial court entered its order denying the motion on December 14, 2010. On December 16, 2010, the City moved the trial court for permission for interlocutory appeal of its December 14 order. Following a hearing on February 4, 2011, the trial court denied the motion on February 22. The City subsequently filed an application for extraordinary appeal to this Court, which we denied in May 2011.

Notwithstanding the City's assertion that the Bellantis had ample notice of and time to defend against the added defense between the October 1, 2010, filing of the City's motion to amend and the ultimate trial of this matter, the delay resulted in large part from the City's late assertion of the defense and the protracted litigation which ensued. We find the City's assertion that the Bellantis had "notice" of the likelihood of an additional defense somewhat disingenuous where the City actively litigated this matter for two years, where no new claims or facts were asserted by the Bellantis, and where the City failed to assert the defense until approximately six weeks before the matter was set for trial.

The City actively litigated this matter as one governed solely by the GTLA for two years. After two years of litigation on the question of negligence, shortly before the matter was set to be tried, the City sought to assert an affirmative defense asserting immunity under the public duty doctrine. We cannot say the trial court abused its discretion by denying the City's motion to amend its answer in this case. In light of our holding on this issue, it is unnecessary to address the trial court's conclusion that the public duty doctrine was not applicable to this case.

### *Tennessee Code Annotated § 29-20-205(4)*

We turn next to the City's assertion that it is immune from suit in this case under Tennessee Code Annotated § 29-20-205(4). The City relies on *Summit Hill Associates v. Knoxville Utilities Board*, 667 S.W.2d 91 (Tenn. Ct. App. 1983), for the proposition that section 29-20-205(4) preserves its immunity for the inspection of property, even if such inspection is inadequate or negligent. The Bellantis, on the other hand, assert that the City is not immune under the statute because inspection of the property in this case was not the sort of inspection governed by the statute. The Bellantis rely on *Morrow v. Town of Madisonville*, 737 S.W.2d 547 (Tenn. Ct. App.), in support of their assertion that inspection that is incidental to a job function and is not a supervisory duty of inspection does not fall within the parameters of section 29-2-205(4). The Bellantis also assert that the City waived this argument where, in its memorandum in support of its motion to dismiss Mr. Douglas from the action, it stated the Bellantis' complaint did "not claim that [Mr. Douglas] engaged in any of those acts exempted from the GTLA's waiver of immunity." Upon review of the record, we find that the City also explicitly stated, "[i]f a governmental entity's immunity is removed for a negligent act of an employee, *as it is here*, the offending government employee is immunized under the GTLA." (Emphasis added.) In light of the City's statements, we agree with the Bellantis that the City waived this issue.

### *Duty of Care*

We next turn to the City's assertion that the trial court erred in establishing and imposing a standard of care upon the City in its operation of picking up trash and debris prior to mowing medians. It is well-settled that, to succeed on a claim for negligence, a plaintiff must demonstrate a duty of care; breach of that duty; injury or loss; and causation, both in fact and proximate. *E.g., Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012). The City asserts that the trial court erred by determining it owed a duty in this case because the incident causing injury to Ms. Bellanti was not foreseeable. The City asserts that the occurrence of four previous incidents of property damage caused by objects that were discharged from mowers between September 2006 to September 2007 is insufficient to establish foreseeability. The Bellantis, on the other hand, assert that the trial court did not err by determining that the incident was foreseeable where four similar incidents had occurred within the year, causing property damages to other vehicles, and where the City had paid claims for damages arising from these incidents. The Bellantis further assert that the City's policy and procedure for litter and debris removal prior to mowing establishes that the City acknowledged a duty of care to prevent such incidents.

Duty is "the legal obligation of a defendant to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Giggers v. Memphis*

*Housing Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)(citation omitted). It is well settled that whether a defendant owes a plaintiff a duty of care is a question of law which must be determined by the courts. *E.g., id*. at 365. It is likewise well settled that "'[a] risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm.'" *Id*. at 365 (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "[T]he imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Id*. (quoting *Bradshaw v. Daniel,* 854 S.W.2d 865, 870 (Tenn. 1993)). If the court determines that a risk of harm is foreseeable, the court

> must then apply a balancing test based upon principles of fairness to identify whether the risk was unreasonable. . . . That is, in consideration of, among other things, the presence or absence of prior similar incidents, and other circumstances, does the foreseeability of the harm outweigh the burden of the duty imposed?

*Id*. (citations omitted).

In this case, it is undisputed that the City had notice of four similar incidents of objects being launched from beneath mowers within a year prior to the incident in this case. Larry Franks (Mr. Franks), the administrator of maintenance for the City of Memphis Division of Parks Services, testified at the trial of this matter that five claims were made against the City for damage to motorists caused by objects being thrown from mowers. Mr. Franks further testified that incidents of objects being thrown from similar mowers operated by the City had occurred in July, April, and May 2007. Mr. Franks testified that, although the mowers are inspected prior to use to determine whether there are "any problems with them," the inspections did not include efforts to determine "how these mowers were launching objects." When asked whether he was aware "that the mower could launch something with fairly significant momentum and velocity," Mr. Franks replied, "[w]e know this, yes." Mr. Franks testified that he had not considered the possibility of serious personal injury, and that no remedial corrective steps were taken notwithstanding four prior known incidents of debris being thrown from mowers into vehicles.

The City clearly was on notice that debris launched from mowers could result in property damage and loss, and we agree with the trial court that it is reasonably foreseeable that a motorist whose vehicle is hit by debris flying at a high velocity may be injured. We accordingly affirm the trial court's determination that the City owed a duty of care to the Plaintiffs in this case.

### *Breach of Duty*

We next turn to whether the trial court erred by determining that the City breached its duty of care in this case. The City asserts that the trial court erred by determining that the evidence supports a finding that the object was present when the area was picked up or would have been found but for the negligence of the employees of the City.

We begin our analysis of this issue with the undisputed facts. On September 5, 2007, a City Parks Services crew mowed the median strip on Dexter Road. The area to be mowed was wider than two traffic lanes, at least 30 feet wide. The trial court found that crew consisted of 18 people. The City's maintenance procedures require that "[t]he entire crew assigned to specific areas does litter pick-up detail." Despite the size of the area to be inspected prior to mowing, only one crew person was assigned to inspect the area from which the padlock was launched into Ms. Bellanti's vehicle. Ms. Bellanti was struck by the padlock when it was hurled through the window of her vehicle as she approached Dexter Road on Dexter Lane. The trial court determined that the padlock was "picked up by the Scag mower and hurled into the driver's side window of the Plaintiff's vehicle, and that it smashed into the Plaintiff's left eye causing severe damage to Plaintiff."

In its brief, the City does not dispute these findings. Moreover, the City acknowledges that it did not follow its internal procedures in this case, but asserts the trial court erred by determining that inspection of the area by a single crew member, Anthony Harris (Mr. Harris) was insufficient. It asserts that, other than the fact of the accident, there was no evidence that the padlock was visible when Mr. Harris inspected the median, or even present. The City additionally asserts that Mr. Harris had completed inspection of the subject median, and two additional medians, before the accident occurred.

At the August 2011 trial of this matter, Mr. Harris testified that he was a truck driver who was assigned to pick-up litter on the median prior to mowing. Mr. Harris testified that he was told "to pick up everything around there[;]" that the grass on the median was approximately six inches tall; that two members of the crew were assigned to pick-up litter; and that he was the only crew person assigned to pick-up litter on the median strip to be mowed. He testified that he could not remember the procedure used to search for litter and debris, but that "[w]hereever I seen paper and trash, then I went and got it." When asked how many times he searched the median, and the distance between search paths, Mr. Harris stated, "[w]ell, it depend [sic] on how much paper is on there." He stated that he couldn't remember how he searched the median.

Generally, a defendant is required to exercise ordinary or reasonable care, or "'the care an ordinarily prudent person would take under the circumstances.'" *Marla H. v. Knox*

*County*, 361 S.W.3d 518, 537 (Tenn. Ct. App. 2011)(quoting *Snider v. Snider*, 855 S.W.2d 588, 590 (Tenn. Ct. App. 1993)(citing *Hawkins Cnty. v. Davis*, 216 Tenn. 262, 391 S.W.2d 658, 660 (1965))). Simply stated, a defendant "must take reasonable care in light of the apparent risks." *Id*. (citations omitted). The determination of whether a defendant breached the duty of care presents a question of fact for the finder of fact. *Id.* at 538 (citations omitted). We will not reverse a trial court's factual determination unless the evidence preponderates otherwise. *Id*. at 527 (citation omitted). The evidence preponderates against a trial court's factual finding only when the record supports an alternative finding with greater convincing evidence. *Id*. (citation omitted).

The evidence does not preponderate against the trial court's determination that the City breached the duty of care in this case. It is undisputed that the City did not follow its own procedures to ensure that debris was removed from the median prior to mowing in this case. Further, it is clear that Mr. Harris received no instruction on how to inspect the area. Mr. Harris's testimony suggests that his inspection consisted of removing "paper" that was visible during a single walk down a median that is at least two lanes wide. It also is undisputed that the City had notice that objects had been launched at vehicles from beneath mowers, that vehicles had been damaged as a result, and that objects were thrown at a high velocity from the mowers. The City took no remedial steps to address the possibility of further property damage or personal injury, and it failed to adequately inspect the median on Dexter Road to ensure that it was clear of debris before mowing. The City offers no evidence that would preponderate against the trial court's finding.

### *Causation*

We turn finally to the City's assertion that the trial court erred by determining that its action or inaction was the proximate cause of the injuries sustained by Ms. Bellanti. In general, causation is a question of fact for the finder of fact. *E.g., Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005). The supreme court has distinguished between cause in fact and proximate cause as follows:

> "Cause in fact refers to the cause and effect relationship between the defendant's tortious conduct and the plaintiff's injury or loss. Thus, cause in fact deals with the "but for" consequences of an act. The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct. In contrast, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. Proximate or legal cause is a policy decision made by the legislature or the courts to deny liability for otherwise actionable conduct based on considerations of logic, common sense, policy, precedent and "our

> more or less inadequately expressed ideas of what justice demands or of what is administratively possible and convenient."

*Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 705 (Tenn. 2011)(quoting *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 n.6 (Tenn.1997) (citations omitted)). The courts have developed a three-pronged test to establish proximate cause: (1) the conduct of the defendant must have been a "substantial factor" in causing the injury; and (2) no rule or policy relieves the wrongdoer from liability; and (3) the harm or injury could have been reasonably foreseen or anticipated "by a person of ordinary intelligence and prudence." *Hale v. Ostrow*, 166 S.W.3d at 719 (citations omitted).

In the argument section of its brief addressing this issue, the City reiterates its argument that the injuries suffered by Ms. Bellanti were not foreseeable. It additionally asserts that, assuming its failure to adequately inspect the area was a cause in fact of Ms. Bellanti's injuries, it was not the proximate cause. It is undisputed in this case that the City was on notice of prior instances of damage caused by objects being propelled into vehicles by mowers. The City does not appeal the trial court's finding that the padlock that struck Ms. Bellanti was hurled from the mower, nor does it dispute that it failed to follow its own procedures for inspecting the area for debris prior to mowing. There is nothing in the record to preponderate against the trial court's determination that the City negligently failed to properly inspect the area prior to mowing, that the failure to do so caused the padlock to be hurled from the mower and into Ms. Bellanti's vehicle, and that such an incident was foreseeable in light of prior incidents. Accordingly, the evidence does not preponderate against the trial court's finding of causation in this case.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. We decline to address the City's assertion that the trial court erred by denying its motion to amend on the alternative basis that the public duty doctrine is not applicable to this matter as advisory in light of this holding. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs. Costs on appeal are taxed to the Appellant, the City of Memphis.

_____
DAVID R. FARMER, JUDGE